Joan Marie MOORE, Appellant,

v.

Barbara A. SORDAHL, et al.,
Respondents.

No. C1–85–1838.

Court of Appeals of Minnesota.

July 1, 1986.

Susan J. Sachs, Wertz Law Office, Minneapolis, for appellant.

Gary L. Meyer, Paul A. Kyyhkynen & Associates, Fridley, for respondents.

Heard, considered and decided by FOLEY, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

FOLEY, Judge.

Joan Marie Moore appeals from a July 10, 1985 judgment dismissing her equitable claims for an interest in various real property titled in James Moore, a man with whom she had lived for four years without benefit of marriage. She further appeals the dismissal of her claim to a one-half remainder interest in his estate. In entering judgment for respondents, children of James Moore, the trial court found that, although appellant's claims arose prior to the effective date of the Minnesota palimony statutes, Minn.Stat. §§ 513.075 and 513.076, case law interpreting the statutes was, nonetheless, relevant in deciding these claims. No post-trial motions were made. We affirm.

## FACTS

Appellant Joan Moore and James Moore began cohabiting in January 1975. Sexual relations also commenced at this time. James Moore continued to maintain his own apartment with funds from a separate account until November 15, 1979, the date of his death. Throughout this period, appellant used her legal name, Mary Joan Taylor, and continued to do so for two years after James Moore's death. She legally changed her name in June 1981.

James Moore continued to work steadily until his retirement in January 1979. Appellant did not work outside the home during the relationship. Her sole source of income was $200–$250 per month in disability benefits. She also received medical assistance to help defray monthly expenses of $1,500 for cancer treatments.

In 1976 James Moore purchased real property in Merrifield, Minnesota on a contract for deed, supplying the down payment with his own funds. Title was held in his name only. He continued to make the monthly contract for deed payments from his separate funds until his death, after which appellant made five or six payments. The balance was paid by James Moore's estate.

Appellant testified that the couple became engaged in early 1976, but decided to forego marriage because they believed she would lose her medical assistance benefits. Appellant further stated that she and James Moore had an oral understanding that they would spend the rest of their lives together and share their resources and expenses. It was uncontested at trial that the couple never entered into a written agreement. Personal assets, including automobiles, checking and savings accounts, life insurance policies and stock was at all times separately owned. Appellant did not have authority to withdraw funds from James Moore's savings or checking accounts.

The couple subsequently decided to build a home on the Merrifield property. Appellant took an active role in the planning process and performed the primary care-taking responsibilities. At trial she claimed that she contributed over $1,000 in home improvements but admitted receiving as much as $10,000 from James Moore over the period of their relationship for household expenses.

James Moore died intestate. Insurance policies he maintained throughout his lifetime remained unchanged and named only his former wife and children as beneficiaries. Respondents claimed that they had no knowledge of their father's relationship with appellant until after his death. A friend of the couple, however, testified that they held themselves out as married. In early 1979 appellant's health improved, and she testified that they renewed their plans to marry later that year. However, James Moore died before the ceremony could take place.

## ISSUES

1. Did the trial court correctly apply the law in determining that appellant was not entitled to any equitable interest in property owned by the man with whom she had lived without benefit of marriage?

2. Are the trial court findings and conclusions of law supported by the evidence?

## ANALYSIS

It is well established that the standard of review in absence of a motion for a new trial is whether the evidence sustains the findings of fact and whether the findings of fact sustain the conclusions of law and the judgment. *Greunhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). Findings will be upheld unless clearly erroneous. Minn.R.Civ.P. 52.01. By contrast, whether the trial court utilized the proper standards in arriving at its decision is a question of law. *See Van De Loo v. Van De Loo*, 346 N.W.2d 173, 175 (Minn.Ct.App.1984). Even if a trial court errs in applying the law, the result will be upheld on appeal if it is correct. *Sand v. Sand, 379 N.W.2d 119, 121 (Minn. Ct.App.1985)*.

Minnesota's palimony statutes, Minn. Stat. §§ 513.075 and 513.076 (1984), enacted in response to the well known and often cited case of *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976), became effective on June 1, 1980. In essence, the statutes require a written contract between parties living together in contemplation of sexual relations before a court will consider a claim by one party to the other's earnings or property.

James Moore died in 1979—no marriage had taken place. The trial court recognized that Minn.Stat. §§ 513.075 and 513.-076 were therefore inapplicable to this case but relied on three post–1980 cohabitation decisions in dismissing appellant's claim for equitable relief: *In re Estate of Eriksen*, 337 N.W.2d 671 (Minn.1983); *Tourville v. Kowarsch*, 365 N.W.2d 298 (Minn.Ct.App. 1985); and *Hollom v. Carey*, 343 N.W.2d 701 (Minn.Ct.App.1984). While it would have been better practice for the trial court to consider pre–1980 cases in reaching its decision, the failure to do so was not error under the facts of this case. Even if we determined that the trial court erred as a matter of law, we would not similarly find error in the result.

Of the three cases relied on by the trial court, only the *Hollom* court utilized the palimony statutes to resolve the issues before it. As such, *Hollom* was an inappropriate basis for analogy to the present case. In *Eriksen*, by contrast, the court held that Minn.Stat. §§ 513.075 and 513.076 were inapplicable when the claimant did not seek to assert any rights in the cohabitant's property, but instead sought to protect and preserve her own property which she acquired for consideration wholly independent of any service contract related to cohabitation. *Eriksen*, 337 N.W.2d at 673–74.

Likewise, in *Tourville* the court did not address the impact of Minn.Stat. §§ 513.-075 and 513.076 on the appellant's claim for equitable relief since the trial court's finding that neither an express nor an implied

agreement existed was reasonably supported by the evidence.

Taken together, *Eriksen* and *Tourville* simply reiterated basic principles of contract law. In *Tourville*, the claimant did not meet his burden of proving that an agreement existed. In short, he failed to establish a "meeting of the minds," a prerequisite to proving the existence of either an express or an implied agreement. *See Roberge v. Cambridge Cooperative Creamery*, 248 Minn. 184, 188, 79 N.W.2d 142, 145–46 (1956). In *Eriksen*, it was clear that an agreement existed and the court focused its attention on the sufficiency of consideration. Since consideration supporting the oral agreement derived from sources wholly independent of the parties' contemplated sexual relations, Minn.Stat. §§ 513.075 and 513.076 did not bar the claim. "Those statutes will apply only where the *sole* consideration for a contract between cohabiting parties is their 'contemplation of sexual relations * * * out of wedlock.' " *Eriksen*, 337 N.W.2d at 674 (emphasis in original).

*Carlson v. Olson*, 256 N.W.2d 249 (Minn. 1977), a decision relied upon by appellant as controlling authority, does not bolster her position but instead illustrates why her equitable claim must fail. In *Carlson* the parties held themselves out as a married couple to friends and family throughout their 21–year relationship, raised a child and owned the homestead and other personal property as joint tenants. Partition of the property was thus an appropriate remedy for effectuating the reasonable expectations of the parties under a theory of implied contract. *Id.* at 255.

In the present case, it was disputed whether the parties held themselves out as a married couple. Respondents claimed no knowledge of the four-year relationship, while a friend of the couple testified that they treated the relationship as a marriage. Since the trial court was in a better position to assess the credibility of the witnesses, we do not pass on the plausibility of

respondents' claims. *See* Minn.R.Civ.P. 52.01.

Carlson is also distinguishable on other grounds. In that case, the homestead and other personal property was jointly owned. Here, all real and personal property was separately owned throughout the relationship. Decedent supplied the downpayment on the homestead and the contract for deed payments from his separate funds. The evidence in this case plainly establishes that the parties intended to keep their finances and assets separate. It is further significant that decedent did not alter his life insurance policies to include appellant as a beneficiary along with or instead of his former wife and children or prepare a will to provide for appellant.

The evidence established that neither an express agreement, oral or written, nor an implied agreement existed between appellant and decedent to share equally in all property accumulated before and during their nonmarital relationship. Imposition of a constructive trust is also inappropriate since appellant failed to establish by clear and convincing evidence that such relief was necessary to prevent unjust enrichment. *See Eriksen,* 337 N.W.2d at 674.

In reaching our decision, we do not imply that appellant's claims are groundless. The evidence reflects that she was devoted to decedent and helped to enrich the last years of his life. These facts alone, however, do not dictate resolution of the case in appellant's favor.

## DECISION

The trial court's findings and conclusion that appellant was not entitled to an equitable interest in decedent's property, including a one-half interest in the remainder of decedent's estate, and that she failed to establish justification for imposition of a constructive trust on the property by clear and convincing evidence was not clearly erroneous.

Affirmed.