In re ESTATE OF Jorgen M. ERIKSEN, Deceased.

No. CX–82–1421.

Supreme Court of Minnesota.

Aug. 19, 1983.

Levitt, Palmer, Bowen, Rotman & Share, Minneapolis, for appellant Estate of Eriksen.

Hadlick, Hoedeman & Harper, Minneapolis, for respondent.

WAHL, Justice.

Karen Wicklund, personal representative of Jorgen M. Eriksen's estate, appeals from an order of the Hennepin County District Court, Probate Court Division, which allowed a claim by Pamela A. Potvin against decedent's estate. Potvin sought to establish a one-half interest in a home which she and Eriksen shared, although legal title was solely in Eriksen. Based on the factual findings of the referee, the probate court allowed Potvin's claim and created a constructive trust consisting of a one-half interest in the home. Wicklund argues on appeal that Minn.Stat. § 513.075 (1982) absolutely bars a trial court from enforcing an agreement regarding property and financial relations between an unwed, cohabiting man and woman, unless the agreement is in writing. Additionally, appellant argues that the probate court should not have imposed a constructive trust on the property, because there was no evidence here of fraud, duress or other circumstances which normally move a court to grant equitable relief. We conclude that section 513.-075 and its companion, section 513.076, do not apply to the facts of this case and that the court properly imposed a constructive trust on the disputed property. Accordingly, we affirm the order of the probate court allowing Potvin's claim and awarding her one-half interest in the property she and decedent shared.

Jorgen Eriksen and Pamela Potvin began living together in June 1977. They lived in rental premises for approximately 2 years. Throughout that time both parties contributed equally to the payments of certain expenses, including rent and utilities. Potvin paid Eriksen for her half of the expenses by check.

In March 1979, the parties agreed to join in the purchase of a home to provide them with shelter and to be an investment for both of them. They each understood that the home would be purchased equally with joint funds, and in both their names. However, they ultimately agreed that title would be placed solely in Eriksen's name and that Eriksen alone would execute the $49,000 purchase money mortgage. Potvin and Eriksen agreed to this arrangement for two reasons. First, as Potvin was still married, although legally separated, any acquisition or record title by her would automatically create statutory inchoate rights in her estranged husband. Further, a mortgage would require the estranged husband's consent, which would not likely be forthcoming. Second, AFDC authorities advised Potvin that she could lose some supplemental AFDC benefits she was then receiving if she took legal interest in the real estate with Eriksen.

After Potvin and Eriksen purchased their home, they shared equally in all costs and expenses in connection with it, including the mortgage payment (principal, interest, any late charges, homeowner's insurance and taxes), utilities, and premiums on a decreasing term life insurance policy Eriksen bought in 1979.

Potvin and her husband were divorced on January 8, 1981. Eriksen died on May 13, 1981. The parties never signed an agreement detailing their financial arrangements regarding the property. When Eriksen died, the proceeds of the decreasing term mortgage protection policy purchased by the parties paid nearly all remaining mortgage indebtedness on the property.

The probate court found that the estate would be unjustly enriched if it held sole title to the property and gave Potvin an

undivided one-half interest in it. Karen Wicklund, as personal representative of Eriksen's estate, holds Potvin's interest as a constructive trustee.

1. Wicklund argues that Minn.Stat. § 513.075 absolutely bars a trial court from enforcing an agreement regarding property and financial relations between an unwed, cohabiting man and woman unless the agreement is in writing. However, Wicklund admits that the probate court was correct in this case in refusing to apply section 513.076, since Potvin's claim is not based on the fact that Potvin and Eriksen lived together "out of wedlock" "in contemplation of sexual relations." These statutes are *in pari materia,* and we conclude that they do not operate to deprive the probate court of jurisdiction in this case.

Section 513.075 provides:

If sexual relations between the parties are contemplated, a contract between a man and a woman who are living together in this state out of wedlock, or who are about to commence living together in this state out of wedlock, is enforceable as to terms concerning the property and financial relations of the parties only if:

(1) the contract is written and signed by the parties, and

(2) enforcement is sought after termination of the relationship.

Section 513.076 provides:

Unless the individuals have executed a contract complying with the provisions of section 513.075, the courts of this state are without jurisdiction to hear and shall dismiss as contrary to public policy any claim by an individual to the earnings or property of another individual *if the claim is based on the fact that the individuals lived together in contemplation of sexual relations and out of wedlock with-*

*in or without this state.* (Emphasis supplied.)

The Minnesota legislature enacted sections 513.075 and 513.076 in 1980, following the California Supreme Court's decision in *Marvin v. Marvin,* 18 Cal.3d 660, 557 P.2d 106, 134 Cal.Rptr. 815 (1976). The California court held that an oral agreement between an unwed, cohabiting man and woman to pool earnings and to share property was enforceable so long as the contract was not expressly based on an illicit consideration of sexual services. 18 Cal.3d at 674, 557 P.2d at 116, 134 Cal.Rptr. at 825. In *Marvin,* Michelle Triola claimed that she agreed to give up her career and devote herself full-time to Lee Marvin as a companion, homemaker, housekeeper and cook; in return, Marvin agreed to provide for Triola's financial support and needs for the rest of her life. 18 Cal.3d at 666, 557 P.2d at 110, 134 Cal.Rptr. at 819. When their relationship ended, Triola urged the court to impose a constructive trust on one-half of the property acquired during the course of the relationship. 18 Cal.3d at 666, 557 P.2d at 111, 134 Cal.Rptr. at 820.

 The Minnesota legislature addressed this developing area of law when it enacted sections 513.075 and 513.076.[1] Section 513.075 provides that a contract which deals with the property and financial relationship of an unwed, cohabiting man and woman will be enforced if it is written and if the parties seek to enforce it after the relationship ends. Conversely, section 513.-076 provides that a trial court cannot hear claims by parties where there is no written contract if the consideration for the oral contract was, as in *Marvin,* the intimate relationship of the couple. Reading these statutes *in pari materia,* as did the probate court, and for the reasons stated below, we conclude that sections 513.075 and 513.076

---

1. These statutes were enacted simultaneously, and both deal with agreements regarding property and financial relations of unwed, cohabiting men and women. They are *in pari materia;* statutes *in pari materia* should stand together and be harmonized. *People for Environmental Enlightenment and Responsibility (PEER), Inc. v. Minnesota Environmental Quality Council,* 266 N.W.2d 858, 866 (Minn.1978). The reason is that all statutes that relate to the same subject matter were presumably enacted in accord with the same general legislative policy and that together they constitute a harmonious and uniform system of law. *State ex rel. Carlton v. Weed,* 208 Minn. 342, 294 N.W. 370 (1940).

were not intended to apply to the facts of this case where the claimant does not seek to assert any rights in the property of a cohabitant but to preserve and protect her own property, which she acquired for cash consideration wholly independent of any service contract related to cohabitation.

■ As the probate court noted, Potvin's claim to one-half of the home in this case is based on the agreement between Potvin and Eriksen to join in the purchase of a home. Although they lived together "out of wedlock" and "in contemplation of sexual relations," their sexual relationship did not provide the sole consideration for the agreement. Each party contributed money equally toward the expenses of purchasing and maintaining the home, and each contributed equally to the premiums for the credit life insurance policy which ultimately paid $48,334.63 on the mortgage when Eriksen died. Potvin's claim is similar to the claim made by a joint venturer or partner, as the probate court noted in its memorandum. Sections 513.075 and 513.076 and the cases dealing with division of property between an unmarried cohabiting man and woman are not apropos. Those statutes will apply only where the *sole* consideration for a contract between cohabiting parties is their "contemplation of sexual relations * * out of wedlock." They do not apply in this case. The probate court properly exercised jurisdiction.

■ 2. Appellant also claims that a constructive trust should not be imposed on the jointly-held property, in the absence of fraud, duress or other wrongdoing. The probate court, however, correctly found that fraud need not be present in order to impose a constructive trust. The court must only be persuaded by clear and convincing evidence that the imposition of a constructive trust is justified to prevent unjust enrichment. *Knox v. Knox,* 222 Minn. 477, 481, 25 N.W.2d 225, 228 (1946). Here, where Pamela Potvin contributed equally to the acquisition and maintenance of the home, and where she contributed equally to the premiums on the insurance which ultimately paid the mortgage after

Eriksen's death, failure to award her one-half interest in the home would result in unjust enrichment of the estate.

Affirmed.