**Benny HOLLOM, Respondent,**

v.

**Joyce M. CAREY, Appellant.**

**No. C8–83–1279.**

Court of Appeals of Minnesota.

Feb. 8, 1984.

Thomas G. Rowe, St. Paul, for appellant.

Jerome S. Rice, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This appeal arises from the consolidated trial of two cases. The district court ruled that appellant, Joyce Carey, was unlawfully detaining property from respondent, Benny Hollom, and that appellant's claim for damages was barred by Minn.Stat. §§ 513.075 and 513.076 (Cohabitation, property and financial arrangements; Necessity of contract). We affirm.

## FACTS

The relationship between Carey and Hollom began in May of 1970, when they met and began to date. Carey moved in with Hollom in February of 1973. The couple lived in a house that Hollom had purchased on a contract for deed from his mother in 1971. They shared household expenses and groceries. Hollom made the payments on the contract for deed.

The parties' relationship was a romantic one, although fraught with episodes of verbal and physical abuse. Nonetheless, they maintained an intimate sexual relationship from 1973 through 1979. The existence of a sexual relationship after 1979 is disputed.

Hollom was laid off from his job in 1976. He stopped making payments on the contract for deed at that time. Neither party

made any further payments until Carey began to make them in July of 1980.

Carey moved out of the house in December of 1977 because she thought that Hollom was going to sell it. Their relationship continued after Carey moved out. She soon began to spend weekends at Hollom's house. Carey helped Hollom with some of the bills on the house while she maintained her own apartment.

Carey moved into Hollom's house for the second time in December of 1979. She claims that Hollom promised her a one-half interest in the house if she would move back and continue to help him financially. Hollom denies having made any such promise. Carey denies any sexual relationship in 1979; Hollom said he would not have allowed Carey to stay with him if there had not been a romantic relationship. Carey had a deed prepared conveying an interest in the house to her after she moved back in. Hollom refused to sign it. Carey continued to provide financial assistance to Hollom, including improvements on the property, payment of various monthly bills, and payment of back taxes.

Carey filed a domestic abuse complaint against Hollom in July of 1981. As a result, Hollom was ordered out of the house for one year. After the one year period had elapsed, he served notice on Carey to vacate the premises. When she refused, he commenced an action for unlawful detainer. She, in return, filed an action for damages pursuant to Minn.Stat. §§ 513.075 and 513.076.

The two cases were consolidated for trial. The trial court ruled that Carey was unlawfully detaining the property against Hollom and that her claim was barred by the statutes.

## ISSUES

1. Did the trial court erroneously apply Minn.Stat. §§ 513.075 and 513.076 retroactively to bar appellant's claim?

2. Did the trial court err in applying Minn.Stat. §§ 513.075 and 513.076 to bar appellant's claim because there was no written contract?

## ANALYSIS

1. The pertinent statutes are as follows:

513.075 Cohabitation, property and financial arrangements

If sexual relations between the parties are contemplated, a contract between a man and a woman who are living together in this state out of wedlock, or who are about to commence living together in this state out of wedlock, is enforceable as to terms concerning the property and financial relations of the parties only if:

1) the contract is written and signed by the parties, and

2) enforcement is sought after termination of the relationship.

513.076 Necessity of contract

Unless the individuals have executed a contract complying with the provisions of Section 513.075, the courts of this state are without jurisdiction to hear and shall dismiss as contrary to public policy any claim by an individual if the claim is based on the fact that the individuals lived together in contemplation of sexual relations and out of wedlock within or without this state.

Appellant argues that the trial court improperly applied Minn.Stat. §§ 513.075 and 513.076, effective June 1, 1980, retroactively to bar her claim. She alleges that the trial court based its application of the statute on her sexual relationship with Hollom from February of 1973 through December of 1979. However, the trial court found that the parties maintained a sexual relationship off and on through July of 1981 and that Carey was invited back to Hollom's home in contemplation of sexual relations. These findings bring the case within the period after enactment of the statutes in 1980.

Appellant also argues that her claim arose in 1979 when Hollom promised her an interest in his house. However, the trial court found that Hollom never promised to convey any portion of his property to Carey.

■ The trial court had the advantage of observing the witnesses and judging their credibility on a first hand basis. Since trial court findings are a product of first hand observation, they possess a certain integrity not contained in the written record alone. *Tamarac Inn, Inc. v. City of Long Lake,* 310 N.W.2d 474 (Minn.1981). Consequently, the findings of the trial court should not be disturbed unless, upon review of the entire evidence, the reviewing court is left with a definite and firm conviction that a mistake has been made. *City of Minnetonka v. Carlson,* 298 N.W.2d 763 (Minn.1980). After a review of the evidence, we are not convinced that a mistake has been made.

2. The Minnesota Supreme Court has interpreted sections 513.075 and 513.076 only once since their enactment in 1980. *Estate of Jorgen M. Eriksen,* 337 N.W.2d 671 (Minn.1983). The facts in *Eriksen* are quite different from the case at hand. The parties in *Eriksen* lived together "out of wedlock" and "in contemplation of sexual relations." They planned to purchase a home together with joint funds and to hold title in both their names. However, the title and the mortgage were in Eriksen's name alone. There were two reasons for this arrangement. First, the woman was still married. Her name on the title would give her husband inchoate rights. In addition, his consent would have been required to obtain the mortgage. Secondly, the woman could lose some of her AFDC benefits if she held an interest in the property. Though they never executed a written agreement delineating their financial relationship, they shared all expenses related to the property equally.

The Supreme Court found that sections 513.075 and 513.076 were not intended to apply to the case. *Id.* at 674. The claimant was not seeking to assert rights in the property of a cohabitant, but "to preserve and protect her own property, which she acquired for cash consideration wholly independent of any service contract related to cohabitation." *Id.* at 674. The court likened the situation to that of a claim by a joint venturer or a partner. *Id.* at 674.

The court affirmed the probate court's creation of a constructive trust of one-half of the property for the claimant's benefit to avoid unjust enrichment of Eriksen's estate.

■ The case at bar is distinguishable from *Eriksen* in several respects. First, the disputed property was not purchased jointly by the parties; it was always owned by Hollom. Second, there was never a clear understanding between the parties that the property would be jointly owned. Third, there are no extenuating circumstances justifying the lack of a written agreement between the parties.

### DECISION

The trial court found, and we agree, that this is precisely the type of claim that sections 513.075 and 513.076 were designed to prohibit absent a written agreement between the parties. Since the trial court's findings are not clearly erroneous, and the situation provides no compelling reason to invoke equitable powers, we affirm.

Counsel for appellant made no appearance despite having made a request for oral argument. Respondent did appear and incurred additional, unnecessary costs. Attorneys fees of $300 are awarded to respondent.