**In re the Marriage of Cheryl A. DE-VAULT, f/k/a Cheryl A. Waller, Petitioner, Respondent,**

v.

**Timothy M. WALLER, Appellant.**

**No. C7–92–1300.**

Court of Appeals of Minnesota.

Dec. 29, 1992.

Mary Kay Klein, Carpenter, Benshoof & Klein, P.A., Bemidji, for respondent.

Timothy L. Tingelstad, Keyes and Faver, Bemidji, for appellant.

Considered and decided by RANDALL, P.J., and KALITOWSKI and DAVIES, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant Timothy Waller challenges the trial court's decision refusing to require respondent to pay child support.

## FACTS

The parties' 19–year marriage was dissolved by stipulation in 1989. Appellant received custody of the parties' four children from September 25 to the end of each school year. Respondent, who had moved to Arizona, had custody each summer, except for a three-week period during which appellant was allowed to take a vacation with the children.

Appellant's support obligation was set at $450 for June, July and August and $500 for September with the proviso that respondent spend $250 on the children's school needs. Appellant's support obligation for the month in which he took vacation with the children was set at $300. Guideline support for an obligor with appellant's net monthly income of $1,600 would have been $624. *See* Minn.Stat. § 518.551, subd. 5(a) (1988). By the terms of the stipulation respondent did not have to pay support because her $500 net monthly income was deemed minimal, and because she paid visitation expenses and waived maintenance.

In 1991, respondent remarried and moved back to Minnesota to work at her new husband's resort. Evidence was presented to the trial court to indicate respondent received no wages for her work on the resort and the resort lost $9,062 in 1991. In March 1992, alleging a substantial increase in appellant's income, respondent moved to increase appellant's support obligation to the guideline amount. Appellant moved for guideline support from respondent during the school year alleging respondent could have a $925 net monthly income if she took outside employment rather than working at her husband's resort.

The same trial judge who presided at the dissolution found appellant's net monthly income to be $2,077 and increased his support obligation to the guideline level of $727 per month. Also, the court deleted the provision allowing reduced support when respondent took vacation with the children. The trial court further denied appellant's motion for support from respondent stating respondent "has shown no bad faith in making the employment choices she has made," and observing:

> [The] circumstances [originally deemed sufficient for respondent to avoid a support obligation] have not changed as [appellant] continues to have a substantial income sufficient to provide for the needs of the children while [respondent] continues to have a minimal income to provide for her needs.

Appellant challenges the trial court's ruling.

## ISSUE

Did the trial court abuse its discretion in determining that respondent did not have the ability to pay child support?

## ANALYSIS

Under Minn.Stat. § 518.64, subd. 2(a) (Supp.1991), a child support obligation

may be modified upon a showing of substantial change in either party's circumstances. Our review of a support obligation

> is limited to looking at whether the trial court abused its discretion in the sense that its order was arbitrary or unreasonable or without evidentiary support.

*Compart v. Compart,* 417 N.W.2d 658, 661 (Minn.App.1988).

The trial court found respondent works with her husband at the resort he owns and the resort business netted a loss of $9,062 in 1991. Based on this finding, the court concluded respondent had a minimal income to provide for her needs and therefore was not required to pay child support. There is evidence in the record to support the trial court's determination that respondent continues to lack the ability to pay child support. Therefore, we find no abuse of discretion.

Appellant contends the trial court should have imposed a support obligation on respondent based on her earning capacity. However,

> earning capacity is not an appropriate measure of income unless it is impracticable to determine an obligor's income or the actual income is unjustifiably self-limited.

*County of Morrison v. Watland,* 448 N.W.2d 71, 74 (Minn.App.1989).

The trial court specifically found respondent has "a minimal income to provide for her needs." Thus, income determination is not impracticable. Further, the trial court explicitly stated that respondent's employment choices exhibited no bad faith. Because we defer to trial court credibility determinations, *see* Minn.R.Civ.P. 52.01, we cannot say the trial court abused its discretion by refusing to consider respondent's earning capacity to set her support obligation.

Both parties have requested attorney fees for this appeal. Because we determine that an award of attorney fees is not necessary to enable them to assert their rights we deny their motions for attorney fees. *See* Minn.Stat. § 518.14 (1990).

## DECISION

The trial court did not abuse its discretion in denying appellant's motion to require respondent to pay child support.

Affirmed.

RANDALL, Judge (dissenting).

I respectfully dissent on the issue of whether respondent should be required to pay a reasonable amount of child support to appellant. The trial court found that respondent, during the months of the year she is the non-custodial parent, owes appellant and her children nothing, while not only enforcing but increasing appellant's obligation to pay child support for the months of the year he is the non-custodial parent. The majority affirms. I suggest the specifics of this fact situation, and the law, dictate otherwise.

Appellant has physical custody of the parties' three minor children during the school year. Respondent mother has physical custody during the summer. Throughout the parties' dissolution, they have agreed on joint legal and physical custody. That is not at issue. Only respondent's obligation to pay child support during the school year is at issue.

After divorcing appellant, respondent moved around and acquired some skills as a clerk/bookkeeper. She also has some nursing experience. At some point she moved from Arizona back to Minnesota and worked at a resort in northern Minnesota for room and board rather than a paycheck. She subsequently married the resort owner, her present husband, and, according to her own affidavit, she stated she now

> work[s] at the resort year round, promoting the resort during the winter months and running the regular resort business during the spring, summer and fall.

In addition, the record shows as part of her testimony:

> [m]y work at the resort is year round valuable work and is an integral part of my present life-style and marriage.

Respondent continues to work at the resort for room, board and all expenses, but

continues not to draw a paycheck. While thus employed, but not for a stated salary, she moved the trial court to increase appellant's child support from a prior negotiated level upward to the child support guidelines amount (for those summer months when she is the physical custodian). Appellant did not oppose that motion. He did question whether he should pay increased child support during the three week summer vacation he takes with the children for visitation.

Appellant, while he agreed to pay increased child support during his non-custodial months, made a common sense request to the trial court. He argued that if he was going to have to pay a substantial increase in child support over the previously negotiated amount for the months he was non-custodian, the children's mother should have to pay at least some reasonable support during the school year when she was the non-custodial parent since she had, by her own words, full time valuable work, but was simply opting not to take a paycheck. Rather, she receives all the necessities of life from her second husband in return for her work at the resort.

Respondent argued against any obligation on her part to pay child support. The arguments which the trial court accepted fall roughly into three areas. First, respondent argues that the most recent year for her husband's resort shows a tax loss for income tax purposes of approximately $9000. Respondent also argues that if she is required to pay any child support, she may be forced to quit her job at the resort and seek outside employment. The third argument is that if the resort was making any money, any amount of child support assessed to her would impermissibly take into account her second husband's income since the entire resort and all assets are in his name along. I will address each argument.

Looking at the true facts and applicable law, I suggest the case be remanded to the trial court to take evidence on the reasonable value of respondent's contribution to the resort, and to calculate from that a reasonable amount of child support she should pay during the months when she is the non-custodial parent. By her own admission, respondent has a valuable job at the resort and works at it year round. I suspect on remand, the facts would show exactly that. For a family resort to survive in northern Minnesota, it is helpful, if not essential, for the family owning it to work together to service the customers and avoid as much as possible paying out needed cash for outside help. I expect that respondent is a valued employee of the resort and contributes services likely in excess of 40 hours a week in the areas of bookkeeping, service or overseeing the service of customer needs, the dining room, cleaning of the cabins, boats, procuring of supplies, and many other jobs that are necessary in running a family resort. The value of her services could be calculated by determining the amount of money her present husband would have to pay to replace her. I suggest he would likely have to pay at least $4.50 to $8.00 per hour for a 30–50 hour week to find an adequate substitute. The exact numbers would be the subject of discovery on remand.

The fact that respondent does not draw an actual paycheck with W–2 withholdings is irrelevant and clouds the issue by artificial contrivance. The issue is, does respondent have reasonable income and/or reasonable earning capacity to require her to pay some reasonable child support. It is naive to argue that she does not have reasonable income. Although the resort business, the assets, the checking and banking accounts, et cetera, are solely in respondent's second husband's name, respondent receives from the resort business all expenses for room, board, transportation, clothing, medical expenses, entertainment, and miscellaneous in exchange for her work. If respondent was not married to a man owning a resort who provided her with these things, she would have to be earning a minimum of $800–1200 a month to adequately replace the living expenses she now receives.

It is not a question of respondent's "good faith" or "bad faith" in her employment decision. Respondent and her husband are free to determine whether or not respon-

dent should draw a paycheck, considering the tax and family income ramifications. They could make the rational decision that he would give her a paycheck and take out withholding in order to build up her quarters for social security purposes and to give the business an additional legitimate deduction. Business deductions can even be used in a year with no taxable profits since they can be carried forward as a deduction for future years when there is a taxable profit. If respondent were to receive a paycheck for the reasonable value of her services, there is no question that paycheck would be used as a basis to calculate reasonable child support. By the artificial contrivance of merely refusing a paycheck, respondent should not escape all obligation to pay reasonable child support.

Appellant is correct this would not likely be the case. Appellant's brief states:

> The appellant is unaware of any decisions, by courts in this state or elsewhere, that have allowed a man to avoid paying any child support based upon his proven ability to do so, on the basis that he has remarried and chooses to work for his new wife, who will support him, but will not pay him any wages for the work that he does for her. Minnesota Statutes § 518.551, and the case law as cited in the appellant's memorandum to the trial court, are clear on the issue of imputing earning ability and setting child support based upon the ability of an obligor, where that obligor has willfully self limited, or as in this case totally eliminated, her income.

The clarity of appellant's argument can be seen by the following example. Assume a non-custodial father obligor remarries. Assume he has modest skills and a modest track record as a mechanic for repair work on vehicles. He marries a woman who starts or has a business in her own name. Assume, like respondent's husband here, the new spouse has all the real and personal property, all checking and savings accounts, both business and personal, in her name. She bills out the work, collects all the income, and deposits all the money in bank accounts in her own name. The male obligor fixes cars for his second wife "for nothing." He does not draw a stated salary and/or commission/bonus check. His second wife, from the earnings of her business, takes care of all his board, room, transportation, medical, entertainment, and miscellaneous expenses. He has minor children by a previous marriage. He would not, and should not, escape all obligation for reasonable child support in this state.

A technical finding of respondent's good faith or bad faith in choosing to work for her present husband without pay is not the issue. Spouses should be encouraged to work in each other's business and support each other, as respondent states in her affidavit. Private decisions between respondent and her present husband regarding apportionment of income for tax or other bona fide business reasons, are no business of the court. The sole issue is whether respondent's decision to work without a paycheck and receive in-kind expenses instead of receiving a paycheck is determinative. That was the result in this case. I suggest it is both an abuse of discretion and an error of law.

Minn.Stat. § 518.551, subd. 5(a)(1) (1990) states:

> "Net income" does not include:

> the income of the obligor's spouse, *but does include in-kind payments received by the obligor in the course of employment, self-employment, or operation of a business if the payments reduce the obligor's living expenses.*

(Emphasis added.) Without dispute, respondent *works* in the operation of a business *and receives in-kind payments*, her room, board, et cetera, which "reduces the obligor's [respondent's] living expenses." She is employed full time doing work of real value for which she receives in-kind payment, namely total elimination of her living expenses. Imputing income to respondent would be consistent with current law, which went into effect shortly after the trial court's order in this case. Minn. Stat. § 518.551, subd. 5b(c) (Supp.1991) states:

> If the court finds that a parent is voluntarily unemployed or underemployed,

child support shall be calculated based on a determination of imputed income. A parent is not considered voluntarily unemployed or underemployed upon a showing by the parent that the unemployment or underemployment: (1) is temporary and will ultimately lead to an increase in income; or (2) represents a bona fide career change that outweighs the adverse effect of that parent's diminished income on the child. Imputed income means the estimated earning ability of a parent based on the parent's prior earnings history, education, and job skills, and on availability of jobs within the community for an individual with the parent's qualifications. If the court is unable to determine or estimate the earning ability of a parent, the court may calculate child support based on full-time employment of 40 hours per week at the federal minimum wage or the Minnesota minimum wage, whichever is higher. If a parent is physically or mentally incapacitated, it shall be presumed that the parent is not voluntarily unemployed or underemployed.

On remand, the trial court's calculation of the reasonable value of her assistance at a small northern Minnesota resort should not be hard to determine. The court could calculate child support using as a basis 40 hours a week at the federal minimum wage or the Minnesota minimum wage, whichever is higher. The trial court could reduce that figure by approximately 30–45% to account for bona fide deductions set out in Minn.Stat. § 518.551 (which she would have if she drew an actual paycheck) to determine an approximate net income. Then apply the guidelines to determine child support, or in the trial court's discretion a reduced amount if such is reasonable. The honest result could well be that respondent only ends up paying a modest sum during the months of the school year. But the result would preserve the integrity of the principle that both parents share responsibility for the care of their minor children. See Mund v. Mund, 252 Minn. 442, 445, 90 N.W.2d 309, 312 (1958), cited in Barnier v. Wells, 476 N.W.2d 795, 797 (Minn.App. 1991).

Contrary to respondent's argument, some modest amount of child support she would be required to pay (or more practically, work as a setoff against what appellant owes her during the summer) would not force her to work outside the home. No one is "forced" to work outside the home.

A trial court cannot direct a person to work at a specific job against his will. That does not prohibit it, however, from directing a person to pay support commensurate with a wage he could earn if he sought employment in an occupation for which he is trained and has the present ability to perform. * * * Consequently, the court's award of child support based on a figure which [the obligor] could be earning * * * was within the discretion of the trial court and was supported by the evidence.

Resch v. Resch, 381 N.W.2d 460, 462 (Minn. App.1986) (citation omitted). For that matter, no spouse can be forced to work at home. However, one's choice to do valuable work for a spouse, but decline a paycheck, should not determine a parent's obligation to minor children.

Respondent's other argument, that requiring her to pay child support would impermissibly take into account her present husband's resort-based income, is misplaced. Whether he breaks even, shows a tax loss, or shows modest or large profits, does not affect the reasonable value of respondent's services and the reasonable value of the in-kind payment she receives to cover her living expenses. If the reasonable value of her work is $6.00 an hour, and she works 30–40 hours a week, that does not change whether he makes little or a lot. If his assistant manager was not his spouse, that person would not work for in-kind payments but would demand a normal paycheck. If that assistant manager had minor children by a former marriage, his or her paycheck would be the base for calculating reasonable child support regardless of whether his employer, the resort owner, showed a profit or not. Child support obligors working for a business that is not doing well still pay child support based on

their earnings. There is no indication here that respondent's husband's resort business is in bankruptcy or anything close to it. That is not an issue. Should it become an issue later, it can be handled at that time.

Appellant argues cogently that the final analysis of the trial court appear gender based. I agree. If the law were such that non-custodial mothers were treated differently than non-custodial fathers, I suspect not all would oppose that law. But it is not the present law.

Minnesota courts have a firm history of requiring non-custodial fathers [1] of modest means to pay modest child support. Until the same is true of non-custodial mothers, the tool the courts need to enforce child support against fathers, credibility, is damaged.

I dissent and would remand to the trial court to determine a modest amount of child support that respondent would be required to pay appellant during the school year, or deduct as a setoff from what appellant pays for child support during the summer months. The amount could be calculated using a combination of the reasonable value of respondent's services to their resort business, and the reasonable value of the in-kind payments she receives in the form of her living expenses.

---

1. This case does not contain an obligor who is legitimately physically or mentally disabled or truly unemployed. Fathers and mothers in those categories deserve to be handled differently and with understanding, but those few exceptions do not affect the general rules surrounding the computation of reasonable child support.