Sandra K. ROATCH, Petitioner, Respondent,

v.

Kevin C. PUERA, Appellant.

No. C8–94–2430.

Court of Appeals of Minnesota.

July 25, 1995.

562

Harry E. Eliason, Thuet, Pugh & Rogosheske, Ltd., South St. Paul, for appellant.

Joanna M. Wiegert, Duluth, for respondent.

Considered and decided by AMUNDSON, P.J., and SHORT and DAVIES, JJ.

## OPINION

SHORT, Judge.

Kevin C. Puera appeals from a judgment that established his paternity and child support obligation for two children, J.A.R. (born 3/1/79) and H.L.R. (born 11/12/85), and divided his real and personal property with Sandra K. Roatch, his live-in companion.

## FACTS

Puera and Roatch started dating when he was fourteen and she was twenty years old. In 1979, their first child was born out of wedlock. In 1983, Roatch and their child moved into Puera's one-bedroom trailer, which was located on five acres of land previously given to Puera by his mother.

In 1985, the parties purchased a used two-bedroom trailer and placed it in the same location as their original trailer home. In the fall of 1985, the parties' second child was born out of wedlock. In 1990, the parties built a larger home on the same location as their trailer home. Puera used $45,500 from his mother to finance construction of the home and adjacent shop.

Puera is the owner and operator of Puera Construction Company. The business is located on the same premises, approximately sixty feet from the parties' home. The shop and home share electrical, water, heating, and sewage systems. The home mortgage and business loans are consolidated, and all real and personal property are in Puera's name. Throughout the parties' ten-year cohabitation, Puera and Roatch maintained both individual and joint bank accounts.

Roatch deposited earnings from her part-time, outside employment into her own account and spent the money as she deemed necessary for herself and the family. While Puerra and Roatch never married, the parties shared family responsibilities. Roatch's primary responsibilities were house chores and child care; Puera's tasks included maintaining the business and providing financially for the family.

In 1993, the couple separated. Roatch sued Puera to establish paternity and child support and to divide their property. Puera acknowledges that he is the father of the two children. Shortly before trial, Puera asked the trial judge to recuse allegedly due to a bias demonstrated in a newspaper article. The trial judge declined to remove himself from the case. After a bench trial, the court ordered Puera to pay child support of $750 per month, transferred title of a car to Roatch, and granted Roatch a lien on the home in the amount of $16,000, to be paid in monthly installments of $100 or in full upon sale of the home.

## ISSUES

I. Is the trial court disqualified from hearing this case due to newspaper's

comments made by the court prior to trial?

II. In the absence of a written contract governing the parties' financial matters, did the trial court have jurisdiction to hear Roatch's claim to a division of Puerra's property?

III. Did the trial court err in imputing Puera's net income for purposes of establishing his child support obligation?

## ANALYSIS

### I.

■ A judge's comments to the press may give rise to disqualification based on bias if the judge prejudged the case and is unable to approach the case from an impartial and detached perspective. *See* Minn.Code Jud.Conduct Canon 3C(1)(a) (judge should disqualify himself when impartiality might be questioned for personal prejudice or bias against a party); *In re Welfare of D.L.,* 486 N.W.2d 375, 382 (Minn.1992) (judge may not preside at trial if he has an interest in the outcome or if he could be excluded as a juror for bias), *cert. denied,* —— U.S. ——, 113 S.Ct. 603, 121 L.Ed.2d 539 (1992). While Canon 3A(6) provides "[a] judge should abstain from public comment about a pending or impending proceeding in any court," most appellate courts have not automatically disqualified judges on Canon 3C(1) appearance of partiality when they have been quoted in newspaper interviews. *See generally* Leslie W. Abramson, *Judicial Disqualification Under Canon 3 of the Code of Judicial Conduct* 15–19 (2nd ed. 1992). Whether a judge is disqualified depends on the substance of the comments. *See McClendon v. Clinard,* 38 N.C.App. 353, 247 S.E.2d 783, 785 (1978) (disqualifying judge for statements made to the press).

Prior to trial, Puera asked the trial judge to recuse based on statements in The Pine Knot, July 17, 1994 edition. *See* Minn. R.Civ.P. 63.03 (judge who has already presided at a motion may not be removed except upon an affirmative showing of prejudice); *Nachtsheim v. Wartnick,* 411 N.W.2d 882, 891 (Minn.App.1987) (affirmative showing of prejudice is the sole grounds for removing a successor judge), *pet. for rev. denied* (Minn. Oct. 28, 1987). That news story entitled *Judge Seitz Returns to the Bench after Illness,* contained the following sentences amidst three columns detailing the judge's emergency surgery while on a Colorado vacation and his gradual return to work.

Judge Seitz is working on several cases, including an upcoming trial which could set a precedent in the state.

It involves two unmarried adults, cohabitating with their children.

The laws of Minnesota don't recognize couple's living out of wedlock as having interest in each other's property.

But what about when the relationship spans more than 10 years and produces two children?

Stay tuned.

While the article contained direct quotes from the judge, the comments above were not in quotation marks.

■ The question of disqualification focuses on whether an objective assessment of the judge's conduct produces a reasonable question about impartiality, not on the judge's subjective perception of his or her ability to act fairly. *See State v. Laughlin,* 508 N.W.2d 545, 548 (Minn.App.1993) (court's inquiry must go beyond judge's statements and include an objective examination into the circumstances surrounding removal request). This objective standard requires disqualification not only when there is in fact impropriety, but also when there is an appearance of impropriety. *See United States v. Hollister,* 746 F.2d 420, 425–26 (8th Cir.1984) (avoiding appearance of impropriety is important to develop public confidence in the judiciary). The appearance standard requires recusal only when impartiality can reasonably be questioned, however, not merely when it may somehow be questioned. *Laughlin,* 508 N.W.2d at 548; Leslie W. Abramson, *Judicial Disqualification Under Canon 3 of the Code of Judicial Conduct* 15 (2d. ed. 1992).

■ After a careful review of the record, we conclude the newspaper article does not reflect (1) a strained relationship between the trial judge and Puera or his counsel, or

(2) personal involvement by the trial judge, or (3) information from an extra-judicial source. The statement that the case "might set a precedent" reflects the trial court's assessment from an earlier Minn.R.Civ.P. 56 proceeding at which both attorneys represented the case was one of first impression. Puera failed to establish that the trial judge prejudged the merits of the proceeding before him or that his impartiality could reasonably be questioned based on the article. The trial court is not disqualified from hearing this case because of comments made in the press prior to trial.

## II.

■ Contracts regarding the property and financial relations of parties cohabitating in this state out of wedlock are enforceable only if in writing and signed by both parties. Minn.Stat. § 513.075 (1994). Absent such a contract, Minnesota courts lack jurisdiction to hear one party's claims to the earnings or property of the other party. Minn.Stat. § 513.076 (1994). When the words in a statute are clear and unambiguous, a court must give effect to the plain meaning of the language. Minn.Stat. § 645.16 (1994); *Tuma v. Commissioner of Economic Sec.*, 386 N.W.2d 702, 706 (Minn.1986); *Ullom v. Independent Sch. Dist. 112*, 515 N.W.2d 615, 617 (Minn. App.1994).

■ The trial court awarded Roatch roughly one-third of Puera's net worth. The trial court based its property division on the legal theory of implied contract and the equitable doctrine of unjust enrichment. It is undisputed that the parties had no written contract regarding their property and financial relations. Given this fact, Roatch's claim to a division of property is barred by the plain meaning of Minn.Stat. § 513.075. *See Mechura v. McQuillan*, 419 N.W.2d 855, 858–59 (Minn.App.1988) (without written contract, woman had no claim to real property where man provided entire payment); *Tourville v. Kowarsch*, 365 N.W.2d 298, 300 (Minn.App.1985) (absent written agreement, man could not recover labor and material costs to improvements made to parties' home during cohabitation); *Hollom v. Carey*, 343 N.W.2d 701, 704 (Minn.App.1984) (where

property was not purchased jointly and there was never a clear understanding that property would be jointly owned, Minn.Stat. §§ 513.075 and 513.076 barred claim); *see also* Harry G. Prince, *Public Policy Limitation on Cohabitation Agreements*, 70 Minn. L.Rev. 163, 200 (1985) (Minnesota courts are bound to deny enforcement of unwritten contracts). Because the parties never executed a written contract, the trial court lacked jurisdiction to hear Roatch's claim to Puera's property.

■ Roatch argues these statutes do not apply because she contributed time and money to the household and business during the parties' ten year cohabitation. *See In re Estate of Eriksen*, 337 N.W.2d 671, 674 (Minn.1983) (Minn.Stat. §§ 513.075 and 513.076 only apply where the *sole* consideration for a contract between cohabitating parties is their contemplation of sexual relations). However, *Eriksen* represents a narrow factual exception to the statutory requirement of a written contract governing finances for nonmarried couples in Minnesota. Unlike *Eriksen*, Roatch is not trying to preserve and protect her property. Roatch did not contribute financially to the purchase of the car or the home. Both the home and car were titled in Puera's name. Roatch contributed only minimally to the operation of Puera's business. There was no understanding that the property was owned jointly and the parties executed no written agreement concerning distribution of their property. Under these circumstances, the trial court erred by awarding Roatch an interest in Puera's property. We reverse the trial court's award of the car to Roatch and imposition of a lien on Puera's home.

## III.

■ The trial court has broad discretion in establishing child support, and its decision will be upheld unless it is clearly erroneous. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). In order to calculate child support, the trial court must first determine net income. Minn.Stat. § 518.551, subd. 5(b) (1994). When it is impracticable to determine actual income, a trial court may impute income. *Devault v. Waller*, 494 N.W.2d 92,

94 (Minn.App.1992); *Beede v. Law,* 400 N.W.2d 831, 835–36 (Minn.App.1987). If a self-employed person supports himself, yet reports negligible income, a trial court may base net income on earning capacity. *Ferguson v. Ferguson,* 357 N.W.2d 104, 108 (Minn. App.1984).

■ Puera argues the trial court erred in establishing his net income at an amount consistent with payment of $750 per month in child support for the parties' two children. While Puera agrees he must pay some child support, he suggests his net monthly income is closer to $1,000 than to $2,500. Puera is self-employed and his net income is difficult to calculate because he: (1) operates several small businesses from his home; (2) never drew a salary or allocated income solely from his business; and (3) commingled his personal and business debts. The trial court based Puera's income on business records, tax returns, expert testimony and an examination of the parties' lifestyles. The imputed income figure of $2,500 per month is supported by the record. Under these circumstances, we cannot say the trial court erred in calculating Puera's child support obligation.

## DECISION

First, there is no evidence the trial judge was unable to approach this case impartially. Second, Minn.Stat. §§ 513.075 and 513.076 bar Roatch's claims to a division of Puera's property. And third, the trial court did not err in calculating Puera's child support obligation.

**Affirmed in part and reversed in part.**