**Mary A. OBERT, Appellant,**

v.

**Bradley DAHL, Respondent.**

**No. C3–97–1023.**

Court of Appeals of Minnesota.

Feb. 24, 1998.

Review Granted April 14, 1998.

Larry Neilson, Rooney & Neilson, Ltd., Arden Hills, for Appellant.

Jeffrey P. Hicken, Jensen, Hicken & Scott, P.A., Anoka, for Respondent.

Considered and decided by HARTEN, P.J., and HUSPENI and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Mary A. Obert challenges the grant of summary judgment to respondent Bradley Dahl, dismissing her claims for reimbursement of money she spent in assisting Dahl to purchase a house and for other equitable relief. In granting summary judgment to Dahl, the court concluded that the "anti-palimony" statutes, Minn.Stat. §§ 513.075, .076 (1996) prohibited enforcement of any non-written property contract between the parties based on the fact that the "individuals lived together in contemplation of sexual relations and out of wedlock." Because fact questions exist as to whether the anti-palimony statutes apply, we reverse and remand.

## FACTS [1]

In September 1991, Obert and Dahl began living together. They initially intended to refinance and live in Obert's house, but they learned that she would be unable to obtain financing due to her previously having filed for bankruptcy. The parties became engaged to marry on December 31, 1993. They also found a lot in Ramsey, Minnesota, on which they decided to build a house. Because of her poor credit history, the parties agreed that Dahl would finance the house solely in his name, but that he would amend the title to the property after closing to include Obert's name. To achieve this goal and to enable Dahl to qualify for financing, the parties agreed to reduce Dahl's debt load. No part of this agreement was ever reduced to writing.

Obert spent approximately $27,000 of her own money to enable Dahl to purchase the house, making payments to reduce Dahl's debt load, as well as payments directly related to construction and purchase of the house. Obert's debt reduction expenditures included Dahl's monthly boat payments, Dahl's cabin telephone expenses, Dahl's credit card payments, and Dahl's attorney fees for his prior marital dissolution. Obert's house purchase expenditures included the down payment on the lot, payment for house construction plans, payment on the construction loan, and the down payment on the house. In order to make these payments, Obert withdrew $6,400 from her retirement savings account.

Dahl received financing for the house and purchased it solely in his name in January 1995. Thereafter, Obert paid the utilities but did not make the mortgage payments. Dahl took no action to place Obert's name on the title to the property.

Approximately three months after moving into the house, the parties ended their relationship, and Obert moved out in April 1995. Obert then initiated this action to recover $27,000 and to impose a constructive trust to allow her to obtain joint title to the property. Dahl admitted that Obert made financial contributions towards the house and that she participated in selecting house plans, fixtures, and decorating items. In his deposition, he did not recall having any specific discussions with Obert about the possibility of amending title to the property to include Obert.

Dahl moved for summary judgment, claiming that the district court lacked jurisdiction to hear the case under Minn.Stat. §§ 513.075, .076 (1996) (the "anti-palimony" statutes). He argued that because any contract between the parties was based on their contemplation of sexual relations out of wedlock, these statutes required that contract to be in writing to be enforceable. The district court agreed and granted summary judgment to Dahl.

Obert appeals. On appeal, Dahl moved for an award of attorney fees under Minn.Stat.

---

1. For purposes of summary judgment, the facts are viewed in the light most favorable to Obert, the party against whom judgment was granted.

*Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993).

§§ 518.14, 549.21, subd. 2 (1996). By special term order, the motion was deferred to this panel to consider with the appeal on the merits.

### ISSUES

I.  Did the district court err in granting summary judgment to Dahl based on application of the anti-palimony statutes?

II.  Is Dahl entitled to attorney fees?

### ANALYSIS

#### I.

On appeal from summary judgment, the reviewing court must determine whether there are any issues of material fact and whether the district court erred in applying the law. Minn. R. Civ. P. 56.03; *State, by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). The moving party bears the burden of demonstrating that no material fact issues exist. *Thiele v. Stich,* 425 N.W.2d 580, 583 (Minn.1988).

Minn.Stat. §§ 513.075, .076 (1996) limit enforcement of agreements between unmarried cohabiting couples, as follows:

**513.075 COHABITATION; PROPERTY AND FINANCIAL AGREEMENTS.**

If sexual relations between the parties are contemplated, a contract between a man and a woman who are living together in this state out of wedlock, or who are about to commence living together in this state out of wedlock, is enforceable as to terms concerning the property and financial relations of the parties only if:

(1) the contract is written and signed by the parties, and

(2) enforcement is sought after termination of the relationship.

**513.076 NECESSITY OF CONTRACT.**

Unless the individuals have executed a contract complying with the provisions of section 513.075, the courts of this state are without jurisdiction to hear and shall dismiss as contrary to public policy any claim by an individual to the earnings or property of another individual if the claim is based on the fact that the individuals lived together in contemplation of sexual relations and out of wedlock within or without this state.

A number of Minnesota cases have construed and applied these anti-palimony statutes. *See, e.g., In re Estate of Eriksen,* 337 N.W.2d 671 (Minn.1983); *Roatch v. Puera,* 534 N.W.2d 560 (Minn.App.1995); *Mechura v. McQuillan,* 419 N.W.2d 855 (Minn.App.1988); *Tourville v. Kowarsch,* 365 N.W.2d 298 (Minn.App.1985); *Hollom v. Carey,* 343 N.W.2d 701 (Minn.App.1984).

In the seminal case of *Eriksen,* even though the parties had no written agreement, the supreme court affirmed a probate court's imposition of a constructive trust for the benefit of the surviving cohabitor in property legally owned by the estate of the deceased cohabitor. *Eriksen,* 337 N.W.2d at 674. In so doing, the court concluded that the anti-palimony statutes were

> not intended to apply * * * where the claimant does not seek to assert any rights in the property of a cohabitant, but to preserve and protect her own property, which she acquired for cash consideration wholly independent of any service contract related to cohabitation.

*Id.* at 673–64. The court reasoned that the oral or unwritten agreement between the parties was similar to a joint venture or partnership, and that the anti-palimony statutes "apply only where the *sole* consideration for a contract between cohabiting parties is their 'contemplation of sexual relations * * * out of wedlock.' " *Id.* at 674.

*Eriksen* recognized that our legislature enacted the anti-palimony statutes in response to *Marvin v. Marvin,* 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976). In *Marvin,* the California Supreme Court held that an oral contract to pool earnings and share property was enforceable "so long as the agreement [did] not rest upon illicit meretricious consideration." *Id.,* 134 Cal. Rptr. at 825, 557 P.2d at 116. Thus, under *Eriksen,* unless the sexual relationship constitutes the sole consideration for the property agreement, cohabiting parties may maintain actions against each other regarding their own earnings or property, based on equitable theories such as constructive trust or unjust enrichment.

In cases emanating from this court since *Eriksen,* this court has distinguished *Eriksen* or declined to apply *Eriksen's* interpretation

of the statutes. *See, e.g., Roatch,* 534 N.W.2d at 564 (without written agreement or "understanding" of joint ownership, cohabitor had no interest in house, car, or business where legal title to property was in other party's name and cohabitor made only minimal contributions to household and business); *Mechura,* 419 N.W.2d at 858–59 (without written agreement, cohabitor had no claim to real property where other party provided entire payment); *Tourville,* 365 N.W.2d at 300 (without written agreement, cohabitor could not recover labor and material costs for home improvements when house in other party's name and trial court accepted other party's testimony that he and cohabitor had no agreement); *Hollom,* 343 N.W.2d at 704 (without written agreement, cohabitor had no interest in property where property not purchased jointly and trial court found no clear understanding of joint ownership).[2]

Dahl argues that this case is identical to *Hollom,* where the trial court applied the anti-palimony statutes after it found there was no "clear understanding" that the property would be jointly owned, where only one cohabitor was the legal owner of the property, and where there were no extenuating circumstances justifying the lack of a written agreement. *Hollom,* 343 N.W.2d at 704. We disagree. *Hollom* was not an appeal from a grant of summary judgment[3] and is distinguishable on its facts. In *Hollom,* the trial court made factual findings based on credibility determinations made during a trial; here, the parties dispute whether they agreed to joint ownership of the property. Additionally, unlike *Hollom,* this case involves a claim of extenuating circumstances that would explain Dahl's sole legal ownership of the property.

Rather, we conclude that *Eriksen* set out a clear standard of statutory construction that this court must apply on review of this grant of summary judgment. When the facts are viewed in Obert's favor, it is unclear whether, as *Eriksen* requires, the "*sole*" consideration for the parties' unwritten agreement was their sexual relations. In particular, Obert claims she contributed a significant amount of money towards the purchase of the house. In addition, although the parties initially sought to refinance Obert's home, once it became clear that that option was unavailable, Obert claims that they agreed to work together to prepare Dahl to qualify for financing. Further, Obert claims that the only impediment to her obtaining legal title to the property was her poor credit history. *Cf. Eriksen,* 337 N.W.2d at 672 (unique circumstances, including one cohabitor still being legally married to another and receiving AFDC payments, necessitated agreement to place title to purchased property in other cohabitor's name). Finally, while Dahl made the mortgage payments during the three months that the parties actually lived together in the house, these amounts were only a small fraction of the total amount that Obert allegedly put into the house and into reducing Dahl's debt.

Thus, Obert has presented material fact questions as to whether the anti-palimony statutes should apply. Those facts include whether the parties' sexual relations were the sole consideration for any contract between them and whether Obert seeks to preserve her own property or acquire Dahl's earnings or property. Under these circumstances, the district court erred in granting summary judgment to Dahl. *See DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (summary judgment inappropriate when fact questions exist that can only be properly resolved by trier of fact).

## II.

Dahl claims that he is entitled to attorney fees under Minn.Stat. § 518.14 (1996). Section 518.14 pertains only to marital disso-

---

2. In *In re Estate of Palmen,* 574 N.W.2d 743 (Minn.App.1998), which is also being released today, this court is affirming a grant of summary judgment to a deceased cohabitor's estate. Although *Palmen* reaches a different result, we find it distinguishable because the claimant cohabitor contributed only minimally to the purchase of a cabin and no "extraordinary circumstances" were present to explain the parties' failure to formalize their agreement.

3. We note that all of the cases relied upon by Dahl are inapposite to the extent that they involved application of the anti-palimony statutes after a full trial. In this case, significant fact questions exist that must be resolved before the district court may determine whether the statutes are applicable.

lutions and is therefore inapplicable. *Id.* (statutory award of costs/attorney fees available for any "proceeding under this chapter"). Dahl also requests attorney fees under Minn.Stat. § 549.21, subd. 2 (1996), claiming that this action is frivolous and initiated only by Obert's desire to seek "personal retribution." [4] Because of our decision on the merits, we disagree and decline to award attorney fees.

## DECISION

Because Obert presented material facts challenging the applicability of the anti-palimony statutes, Minn.Stat. §§ 513.075, .076, the district court erred in granting summary judgment to Dahl on Obert's claims for reimbursement of money and other equitable relief.

**Reversed and remanded; motion for attorney fees denied.**

---

4. Minn.Stat. § 549.21 has since been repealed. 1997 Minn. Laws ch. 213, art. 2.