### In re ESTATE OF John Michael PALMEN.

No. C2–97–1546.

Court of Appeals of Minnesota.

Feb. 24, 1998.

Review Granted April 14, 1998.

Carl A. Blondin, Oakdale, for appellant Deborah Lee Schneider.

Patti J. Sullivan, Ulvin and Sullivan Attorneys, P.A., St. Paul, for respondent estate.

Considered and decided by
SCHUMACHER, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

Appellant challenges the dismissal of her claim against respondent estate. Appellant and decedent had lived together as an unmarried couple. Appellant argues that she was entitled to a portion of the estate because of the money and labor she invested in a cabin owned by the decedent.

---

* Retired judges of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

## FACTS

Appellant Deborah L. Schneider and decedent John M. Palmen lived together outside of marriage and had sexual relations for 11 years. During that time, Palmen purchased property upon which the couple built a cabin; all documentation regarding the property was in Palmen's name only. After Palmen died, Schneider sued respondent Eric J. Palmen, the personal representative of Palmen's estate (estate), arguing that she was entitled to a $48,051 portion of its value because she had invested $5,991 in cash for materials and $42,060 in labor in the cabin.

The estate moved for summary judgment, arguing that under Minn.Stat. § 513.076 (1996), the district court did not have jurisdiction to hear Schneider's case. The district court granted summary judgment based on lack of jurisdiction. This appeal followed.

## ISSUE

Does the district court have jurisdiction to hear appellant's claims under Minn.Stat. § 513.076?

## ANALYSIS

In reviewing summary judgment, this court must ask whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). At issue here is whether Minn.Stat. § 513.076 bars jurisdiction. The construction of a statute is clearly a legal question and therefore is fully reviewable by this court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

Minnesota law dictates that a written, signed contract regarding property and financial relations between unmarried cohabitants who are contemplating sexual relations is enforceable after termination of the relationship. Minn.Stat. § 513.075 (1996). Unless the claim satisfies the requirements of section 513.075, courts in Minnesota have no jurisdiction to hear any claim "by an individ-

art. VI, § 10.

ual to the earnings or property of another individual if the claim is based on the fact that the individuals lived together in contemplation of sexual relations and out of wedlock * * *." Minn.Stat. § 513.076.

In 1976, a California case commanded national attention, not only because it involved celebrity Lee Marvin and his former partner Michelle Triola, but also because it involved the contract claims of a party based on her nonmarital cohabitant relationship. *See Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal. Rptr. 815, 557 P.2d 106 (1976). When the Marvins' relationship dissolved, Michelle sought maintenance and enforcement of an oral contract to acquire half of all property acquired during the parties' relationship. *Id.*, 134 Cal.Rptr. at 819, 557 P.2d at 110. The California Supreme Court held that contracts between nonmarital partners are enforceable unless they rest solely on the consideration of meretricious sexual services. *Id.* To avoid the complex litigation and acrimony the nation witnessed in *Marvin*, the Minnesota legislature enacted Minn.Stat. § 513.076 in 1980. *See* Minn. Laws ch. 553, § 2; *Hearing on S.F. No. 1295 Before the Senate Judiciary Committee* (Apr. 18, 1979).

Minnesota abolished common law marriages [1] in 1941. Minn.Stat. § 517.01 (1996). Previously, a common law marriage was seen as a legitimate option when formalizing a marriage was difficult because of expense or geographic remoteness. By the late nineteenth century, however, common law marriages were considered morally questionable. Ellen Kandoian, *Cohabitation, Common Law Marriage, and the Possibility of a Shared Moral Life*, 75 Geo. L.J. 1829, 1848 (1987). In addition, common law marriages raise a central fact issue—whether a marriage exists—if litigation occurs.

To reiterate, cases such as *Marvin* create complex, acrimonious, and expensive lawsuits. In addition, without clear legislation, citizens of a state would be less certain about the financial expectations of their relationships. Through sections 513.075 and 513.076, the state of Minnesota allows contracts between nonmarital cohabitants, but requires that such contracts be in writing with witnesses.[2] These requirements promote the certainty of expectations and limit acrimonious litigation. If parties intend to contract regarding division of finances and/or property in the event of termination of the nonmarital relationship, they may do so in written form. Otherwise, no contracts will be enforced. Besides clarifying expectations for those who live together in contemplation of sexual relations, this approach preempts numerous possible problems with litigation. First, the enforcement of oral contracts, particularly in domestic matters, can entail the particularly onerous task of choosing which of the parties appears more credible with little evidence to guide the court. *See* Robert Oliphant, *Drafting Minnesota Live–In Contracts*, 38 Bench & Bar, Apr. 1982, at 49, 50–51. It would be even more troubling to enforce implied contracts, which may never have been contemplated by the parties.

Only one Minnesota Supreme Court case has directly dealt with Minn.Stat. § 513.076. *See In re Estate of Eriksen*, 337 N.W.2d 671 (Minn.1983). The fact situation is worth restating. In *Eriksen*, the couple first rented a home together, contributing equally to expenses. They then decided to buy a house together. Initially it was to be purchased in both their names, but for a variety of reasons,[3] they decided to purchase the home only in the male's name. The couple shared equally in all costs related to the home. The female sought, and was awarded, one-half

1. The *Marvin* court specifically noted that it was not seeking to "resurrect the doctrine of common law marriage," nor did it hold that the Marvins were "married." *Marvin*, 134 Cal.Rptr. at 831 n. 24, 557 P.2d at 122 n. 24.

2. Neither statute prohibits contracts—be they oral or implied—between those who live together *without* contemplation of sexual relations. For the purpose of this case, we use the term "cohabitant" to refer to those who live together in contemplation of sexual relations.

3. The female was, although legally separated, still married, and any acquisition would create statutory inchoate rights in her estranged husband. Further, the mortgage would have required her estranged husband's consent, which would likely not be given. Finally, the female was then receiving AFDC benefits, which she likely would lose as a result of any interest in real estate. *Eriksen*, 337 N.W.2d at 672.

interest in the property after the male's death. The supreme court upheld the award, stating that the female's claim was "wholly independent of any service contract related to her cohabitation." *Id.* at 674. The supreme court held that sections 513.075 and 513.076

> were not intended to apply to the facts of this case where the claimant does not seek to assert any rights in the property of a cohabitant but to preserve and protect her own property, which she acquired for cash consideration wholly independent of any service contract related to cohabitation.

*Id.* at 673–74. *Eriksen* has since been narrowly construed by this court as pertaining to a very specific fact situation. *See Roatch v. Puera,* 534 N.W.2d 560, 564 (Minn.App. 1995) (categorizing *Eriksen* as a "narrow factual exception to the statutory requirement of a written contract governing finances for nonmarried couples in Minnesota"); *see also Mechura v. McQuillan,* 419 N.W.2d 855, 858 (Minn.App.1988) (distinguishing *Eriksen,* where both parties made equal contributions to the acquisition and maintenance of property); *Tourville v. Kowarsch,* 365 N.W.2d 298, 300 (Minn.App.1985) (distinguishing *Eriksen* because, although mortgage was executed jointly, property was not purchased jointly); *Hollom v. Carey,* 343 N.W.2d 701, 704 (Minn. App.1984) (distinguishing *Eriksen* from instant case where property was not purchased jointly, there was no clear understanding of joint ownership, and there were no extenuating circumstances justifying lack of written agreement).

Here, Schneider and Palmen could have entered into a written contract, or at the very least a joint tenancy, if they had intended to enter into a business-like joint venture, as Schneider asserts. None of the extenuating circumstances present in *Eriksen* are considerations here. Further, there is no evidence that Schneider contributed equally to the purchase and maintenance of the property.

The purpose of statutory interpretation is to give effect to legislative intent, and when words in a statute are clear and unambiguous, the court must give effect to the plain meaning of statutory language. Minn.Stat. § 645.16 (1996). The supreme court wrote that sections 513.075 and 513.076 "will apply only where the *sole* consideration for a contract between cohabiting parties is their 'contemplation of sexual relations * * * out of wedlock.'" *Eriksen,* 337 N.W.2d at 674. The legislature has clearly stated that nonwritten contracts between unmarried cohabitants living together in contemplation of sexual relations are unenforceable in Minnesota and that all claims brought under such contracts must be dismissed as contrary to public policy. This case presents no extraordinary circumstances on which to base an exception to the dictates of sections 513.075 and 513.076.

We acknowledge a published opinion of this court, *Obert v. Dahl,* 574 N.W.2d 747 (Minn.App.1998), being released simultaneously this day, which reaches a different result considering the "palimony" issue. We believe the fact situation in *Obert* is distinguishable and have not followed that decision under the fact situation presented here. In view of the opposite results reached by two separate panels of the court of appeals, the supreme court might revisit *Eriksen* at its earliest opportunity.

## DECISION

Because of the clear mandate of Minn.Stat. § 513.076, we affirm the district court's holding that it had no jurisdiction to hear claims stemming from the alleged oral contract between Schneider and Palmen.

**Affirmed.**

THOMAS G. FORSBERG, Judge (dissenting).

I respectfully dissent. I believe *In re Estate of Eriksen,* 337 N.W.2d 671, 674 (Minn. 1983), is on point and controlling. As in the instant case, the female cohabitor in *Eriksen* wished only to preserve and protect her own property. Also, like in *Eriksen,* this cohabitor invested in the cabin both by providing labor and cash. She is not claiming to be owed monies because of sexual favors.

The supreme court has interpreted the statutes to apply only when the "*sole* consideration for a contract between contracting parties is their 'contemplation of sexual relations * * * out of wedlock.'" *Id.* at 674.

The majority in this case characterizes this interpretation as not giving effect to the legislative intent or plain language of the statute, but until the legislature or the supreme court alters this interpretation, it is the law and we must follow it. *See Hill–Murray Fed'n of Teachers v. Hill–Murray High School,* 487 N.W.2d 857, 862 (Minn.1992) (*stare decisis* applied in interpreting Minnesota Labor Relations Act); *State v. Hofmann,* 549 N.W.2d 372, 375 (Minn.App.1996) (controlling precedent applied in defining "building" for purposes of burglary statute), *review denied* (Minn. Aug. 6, 1996). Further, under the majority's interpretation of the statutes, the female cohabitor in this case would, in effect, be punished for entering into the agreement to purchase the cabin; equitable remedies such as constructive trust, unjust enrichment or quantum meruit would be unavailable to her but available to parties who make similar agreements but do not have an incidental sexual relationship.