In re the Marriage of Laura Gem
THOMAS, Petitioner, Appellant,

v.

James THOMAS, Respondent.

No. C6–86–1957.

Court of Appeals of Minnesota.

June 9, 1987.

Judith Oakes, Oakes & Kanatz, St. Paul, for appellant.

Steven Yasgur, Edina, for respondent.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

PARKER, Judge.

Laura Thomas appeals the trial court's (1) determination of the parties' incomes, which required her to pay child support to James Thomas, (2) valuation and distribution of marital property, and (3) failure to award her attorney's fees. She contends the trial court erred in using 1985 tax returns instead of available 1986 financial records to determine James Thomas' income. She also opposes the postponed property division and repayment schedule as allowing James Thomas a four-year, interest-free loan. Finally, she contends she should have been granted an award of attorney's fees because James Thomas used marital assets to pay his attorney's fees. We reverse and remand.

## FACTS

The five-year marriage of Laura Thomas, now 34, and James Thomas, now 37, was dissolved by decree on August 13, 1986. They had one child, Andrea, now five. The parties reached a partial stipulation on custody and child support, which was incorporated into the court's findings of fact and conclusions of law. The stipulation provided for joint legal and physical custody, with physical custody divided six months at a time between the parents. The custody arrangement is not in dispute.

The parties stipulated that child support would be determined by comparing each party's net monthly income. Any disparity was to be annualized and paid to the party having the lower income, either in a lump sum or in six monthly payments during the period that Andrea is in that parent's custody.

Laura Thomas is an account manager with a net annual income of $15,942.94. James Thomas is self-employed and operates two separate companies, Commercial Upholstery (CU) and Thomas Shooting Accessories (TSA). CU is a small but profitable company that makes lumbar and cervical support rolls for an orthopedic product supplier. In addition to other assets, CU has carried forward a $17,765 tax credit on its books. Because CU is a sole proprietorship, the tax credit can be used either by CU or by James Thomas for his personal income tax. TSA is a small, new company that makes skeet-shooting accessories. James Thomas is a nationally ranked skeetshooter who travels and competes while promoting TSA's line. TSA has consistently run at a loss that closely matches the profit reported by CU. In 1984 CU reported a net profit of $18,500 and TSA a loss of $19,900. In 1985 CU made $66,000 in net profit and TSA lost $64,000. James Thomas' reported income from both of these ventures in 1985 was $10,137. He also receives $4,932 annually from a military disability pension. James Thomas' expert witness at trial extrapolated from the figures for the first half of 1986 that CU would make $80,000 in net profit to TSA's $17,000 loss.

The trial court found Laura Thomas' net monthly income to be $1,328.54 and James Thomas' net monthly income to be $1,255.75. Based on these findings, the court ordered Laura Thomas to pay James Thomas $186 annual child support.

Before and during the marriage Laura loaned James nonmarital funds for his

businesses. No interest was ever paid on these loans, which total $10,500 and remain outstanding.

In the division of property James Thomas received the parties' $19,000 unencumbered lot, and Laura Thomas was given a $7,000 lien against the property (½ the marital contribution). The court accepted the parties' values and ownership of personal property and found that James Thomas owed Laura Thomas $10,500 for repayment of the loan, $5,000 in payment of one-half the combined value of the two companies as determined by the court, and $2,590 as compensation for the disparity in value of the marital property in each party's possession. The court ordered James Thomas to pay Laura Thomas $25,090.[1] The court ordered the property award paid in three equal annual installments, without interest, beginning one year from the date of dissolution.

## ISSUES

1. Did the trial court use an acceptable method of valuing the closely held companies?

2. Did the trial court properly determine the parties' incomes for the purpose of setting child support?

3. Were the findings of fact adequate to justify postponing receipt of appellant's share of marital property and repayment of a loan of nonmarital funds?

4. Did the trial court abuse its discretion in its determination of attorney's fees?

## DISCUSSION

### I

A trial court's findings of fact must have a reasonable and acceptable basis in fact and principle in order to be affirmed. *Bollenbach v. Bollenbach*, 285 Minn. 418, 426–27, 175 N.W.2d 148 (1970).

The only marital assets with disputed values were James Thomas' two companies, CU and TSA. Both parties presented expert witnesses who estimated the companies' value. Laura Thomas' expert, using a "capitalized earnings analysis," testified that CU alone had a value of $102,123 (this figure included the $17,765 tax credit).

James Thomas' expert used the book values of the two corporations and found CU to have a value of $18,168 and TSA a value of $6,265. He then offset these values against a series of debts totaling approximately $23,500 and concluded that the businesses had minimal value (somewhere between one and ten thousand dollars). Although he agreed the tax credit was available to James Thomas as well as to CU, he did not include it in any of his computations.

■ When conflicting opinions of expert witnesses have a reasonable basis in fact, the trier of fact must decide who is right. *Ferguson v. Ferguson*, 357 N.W.2d 104, 107 (Minn.Ct.App.1984). The trial court is not bound by the opinion of any witnesses concerning values. *Lehman v. Hansord Pontiac Co.*, 246 Minn. 1, 7, 74 N.W.2d 305, 310 (1955). The trial court set $10,000 as the combined value of the two companies, but made no specific findings of fact to explain how that figure was determined.

■ Some methods for determining values of companies are more reliable than others. The book value of a closely held company is an often erroneous figure and easily subject to manipulation. *See State v. Wagner*, 233 Minn. 241, 253 n. 13, 46 N.W.2d 676, 684 n. 12 (1951). Capitalized earnings analysis is an accepted basis for valuing a company, even if it is a sole proprietorship, so long as the owner's labor and salary are not the basis of the capitalization. These factors were carefully excluded by Laura Thomas' expert witness in her calculations. Noting that James Thomas himself valued CU at $150,000 in a 1985 financial statement, we reject as unfounded the valuation of both businesses at $10,000. The trial court cannot reject an apparently valid calculation using an accepted method of valuation for a sum seemingly chosen

---

**1.** It is unclear from the way the order is written whether the $7,000 lien was meant as security for payment of the $25,090 property settlement or as an additional award. On remand the court should address this ambiguity.

without any particularized basis. If there is a reason the capitalized earnings analysis is not appropriate in this case, it should be explained in the findings on remand.

■ The court made no findings concerning its treatment of the $17,765 tax credit. Because the tax credit can be applied either toward James Thomas' personal income tax as a sole proprietor, or toward CU's business income taxes, it is apparent that the $17,765 tax credit is a marital asset. Failure to include it in the companies' valuation renders the sum set manifestly contrary to the evidence. On remand the tax credit must be accounted for in the distribution of property, either by adding it to the value of CU or by treating it as a known asset of the parties and dividing its value between them.

## II

■ Laura Thomas contests the trial court's calculation of income leading to the conclusion that she should pay James Thomas $186 annual child support. Specifically, she appeals the use of James Thomas' 1985 income tax return, because the financial records for his companies, prepared by his own bookkeeper, were available for the first six months of 1986 at the time of trial. Those records indicated he would probably have a considerably larger income in 1986 than in 1985.

This court has dealt in the past with the difficulty of determining net income of self-employed individuals:

> The child support guidelines require the use of a net income figure that may be difficult to compute for self-employed persons or those who use tax-avoidance devices.

*Larson v. Larson*, 370 N.W.2d 40, 43 (Minn.Ct.App.1985). The court must determine *current* net income for the purposes of setting child support. Because the figures for the first half of 1986 were available, they should have been considered. On remand the records for the total 1986 income will be available.

## III

■ The trial court has broad discretion in dividing the marital property and that discretion should not be overturned unless it has been clearly abused. *In Re the Marriage of Frank*, 357 N.W.2d 102, 103 (Minn.Ct.App.1984) (citing *Bogen v. Bogen*, 261 N.W.2d 606 (Minn.1977)).

> [H]owever a trial court's decision must be supported "by either clear documentary or testimonial evidence or by comprehensive findings issued by the court."

*Otte v. Otte*, 368 N.W.2d 293, 298 (Minn.Ct.App.1985) (quoting *Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 766 (Minn.1983)). There was, however, no reason given for the delayed repayment to Laura Thomas of her $10,500 loan of nonmarital funds, nor of payment of the balance of the property settlement. Postponing the property distribution by allowing a year until the first payment and setting a three-year, interest-free payment schedule requires justification in the accounting of the court's division of the marital assets; indeed, a substantial portion of the interest-free, delayed payment consists of nonmarital property. The court is required to make particular and specific findings of fact. Minn.R. Civ.P. 52.01; *Lawver v. Lawver*, 360 N.W.2d 471, 472 (Minn.Ct.App.1985). On remand, if the trial court does not require James Thomas to pay interest on this settlement, it must make explicit findings of fact explaining its decision.

## IV

■ The trial court has broad discretion in determining the award of attorney's fees to parties who show the need for financial assistance to carry on the proceeding. *Otte*, 368 N.W.2d at 299 (citing *Solon v. Solon*, 255 N.W.2d 395, 397 (Minn.1977)); Minn.Stat. § 518.14 (1986). Laura Thomas' attorney's fees remained largely unpaid at the time of trial because her only source of income was her salary, a marital asset, which did not provide sufficient cash flow to pay the bills. James Thomas had, and continues to have, access to the cash flow of his companies, which are also marital assets. Laura Thomas did not deplete marital assets to pay her legal fees, and it

appears James Thomas may have. Any amount taken from marital property to pay one party's attorney's fees should be accounted for on remand and the other party compensated in the distribution.

## DECISION

We reverse and remand with instructions.

Reversed and remanded.