In re the Marriage of Carol Bernice
BAKER, Respondent,

v.

Daniel Remember BAKER, Appellant.

No. A06–1252.

Supreme Court of Minnesota.

June 26, 2008.

Richard D. Goff, Richard D. Goff & Associates, Minneapolis, MN, and James G. Ryan, Ryan Law Firm, Minneapolis, MN (on the brief), for appellant.

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, PA, Minneapolis, MN, for respondent.

## OPINION

MEYER, Justice.

In this dissolution action, we review two issues. First, we are asked to decide whether the investment return[1] on the nonmarital portion of certain retirement accounts is also nonmarital. The court of appeals held that the investment return[2] on the nonmarital portion of the retirement accounts is marital property, attributing to the account holder, under an agency theory, the actions of an investment advisor. *Baker v. Baker*, 733 N.W.2d 815, 821–22 (Minn.App.2007). In addition, the court of appeals determined that the account holder's own actions with respect to the accounts constituted active management. *Id.* at 821. We hold that the single test for whether appreciation of nonmarital property is marital or nonmarital is the extent to which marital effort—the financial or nonfinancial efforts of one or both spouses during the marriage—generated the increase. We further hold that, in this case, no significant marital effort was expended to generate the appreciation in value of the retirement funds at issue. We therefore reverse as to the retirement accounts, but we remand to the court of appeals for consideration of the alternative argument that the commingling of income and appreciation and of marital and nonmarital property in the investment accounts renders all of the return marital property.

Second, we are asked to determine whether the district court abused its discretion in failing to account in the property division for attorney fees paid by the husband from marital assets. The court of appeals determined that the husband violated Minn.Stat. § 518.58, subd. 1a (2006), which bars the parties from using marital assets "except in the usual course of busi-

---

1. By "investment return," we mean the total difference between the value of the accounts at the date of the parties' marriage and the value of the accounts on the valuation date. Because there were no withdrawals from the accounts during the marriage and all investment income—interest, dividends, and capital gains—was added to the accounts, the "investment return" at issue here includes both any appreciation or depreciation in the value of the investments and any income earned by the investments during the marriage.

2. The court of appeals used the term "appreciation" rather than "investment return," but we read the court's opinion to use the term "appreciation" to encompass both investment income and appreciation in the value of the investments. In this opinion, we use "appreciation" more narrowly to refer only to the increase in the value of the investments from market fluctuations and not to the income the investments generate.

ness or for the necessities of life" during the pendency of dissolution proceedings. We affirm as to the attorney fees.

Appellant Dr. Daniel Remember Baker married respondent Carol Bernice Baker on May 12, 1990. On May 6, 2003, Ms. Baker filed a petition for dissolution of the marriage. As of trial in May of 2005, Ms. Baker was 57 and Dr. Baker 69 1/2 years of age. They had no children together, although both have children from previous relationships.

On August 25, 2003, the parties secured from the court a stipulated temporary order, which provided, among other things, "Both parties are restrained from transferring, encumbering, concealing or disposing of property except in the usual course of business or for the necessities of life, except as to any future earned income, except as the parties with their attorneys may mutually agree in writing." At trial, the court set a valuation date of February 2005. *See* Minn.Stat. § 518.58, subd. 1 (2006) (defining valuation date for purposes of dividing marital property). Among the issues left for trial were whether the investment return on Dr. Baker's nonmarital portion of certain retirement accounts was marital or nonmarital property and whether Dr. Baker's payment of attorney fees from a marital checking account constituted dissipation of assets.

*SIGS Accounts*

Dr. Baker's former employer, Specialists in General Surgery, Ltd. (SIGS), provided a qualified retirement plan. At the time of the marriage, Dr. Baker's SIGS accounts were worth $957,473.[3] During the marriage, SIGS made contributions to the plan totaling $396,455. Although both parties agree that the balance at the date of the marriage remains nonmarital and that the contributions made during the marriage and the investment return attributable to those contributions ($243,122) are marital, they dispute the characterization of the $1,491,022 investment return attributable to the nonmarital portion. Ms. Baker contends that it is entirely marital. Dr. Baker contends that it is nonmarital.

These disputed amounts reflect a total of 11 separate accounts holding SIGS funds.[4] In late 1991 or early 1992, Dr. Baker moved some of the SIGS accounts to Merrill Lynch under the management of Randy Trask. According to Thomas William Harjes, Dr. Baker's valuation expert,

> Dr. Baker pays a management fee to Merrill Lynch based on a percentage of the assets under management. And * * * there are different money managers that Merrill Lynch has hired to manage different accounts. And * * * Mr. Trask manages and reviews the annual * * * information from those money managers to determine whether different money managers would be hired.

The record is silent as to whether and to what extent the management fees were paid with nonmarital property. Trask testified that he and the money managers he

---

**3.** The valuations of the retirement accounts are taken from the testimony of Dr. Baker's expert, Thomas William Harjes. Ms. Baker does not seriously dispute the valuation methods and offered no expert testimony of her own. Harjes assumed that the investment return on the nonmarital portion was also nonmarital. To trace which amounts were attributable to the original nonmarital portion and which to the annual marital contributions, he used the following method. For

each year of the marriage, he determined what percentage of the account was nonmarital and what was marital, applied that percentage to annual investment return, and added the years together to determine the final amounts. We express no opinion as to the propriety of this methodology.

**4.** Both parties have other retirement assets not at issue in this appeal.

retained had discretion to invest the money in the accounts. According to Trask, Dr. Baker also had the power to direct investments and to transfer funds at will from one investment to another at either the same or different institutions. At least since Dr. Baker turned 59 1/2, the funds were available without a penalty as liquid assets. Before that, he could have accessed them if he paid a penalty.

Trask characterized Dr. Baker's involvement in the Merrill Lynch accounts as "[v]ery passive" and recalled only one stock purchase during the course of their 13–year relationship that was made at Dr. Baker's behest: a purchase for "a few thousand dollars" of stock in a company with which Dr. Baker's son was associated.[5] Trask recalled that in 1998 or 1999, Dr. Baker "transferred his accounts to another firm for a while, but—and then he came back."

The Bakers made no withdrawals and received no distributions from the accounts during the marriage. All investment return was added to the principal. For purposes of Harjes's calculations "any elements of increase in value be it interest, dividends, capital gains distributions or stock appreciation was considered a return on the account." Harjes did not trace individual investments or distinguish between specific premarital and postmarital investments. Because SIGS contributed to the accounts during the marriage, marital and nonmarital funds were commingled in the accounts.

Dr. Baker moved SIGS funds, both within and among investment institutions, at various times during the marriage. In each of the years from 1999 to 2003, he closed at least one account and transferred the funds into new accounts. Of the two present accounts that are not with Merrill

Lynch, one is with Charles Schwab and one is with U.S. Bank. There is very little in the record about these accounts or Dr. Baker's role in those investments.

The district court agreed with Dr. Baker that the investment return on the nonmarital amount held at the time of marriage was also nonmarital and awarded Dr. Baker the entire disputed amount. The court of appeals reversed on this issue. *Baker*, 733 N.W.2d at 822. The court reasoned that because Trask was his agent, Dr. Baker was bound by Trask's actions with respect to the Merrill Lynch accounts. *Id.* at 821. The court also concluded that Dr. Baker himself "actively managed" the funds by transferring funds from one investment to another and by directing the purchase of stock in the business with which his son was associated. *Id.* Finally, the court reasoned that Dr. Baker's control over the funds defeated the claim that his investment was passive. *Id.* at 821–22. Acknowledging the statutory presumption that property acquired during marriage is marital property, the court concluded that the investment return on Dr. Baker's premarital funds "was not the result of mere market forces or conditions but rather the result of marital efforts in the form of entrepreneurial decision-making." *Id.* The court remanded for an equitable redistribution of the marital property, including the SIGS accounts. *Id.*

### Attorney Fees

In late 2003, the parties agreed that Dr. Baker would pay off approximately $43,500 of Ms. Baker's credit card debt. The debt included expenditures for the couple's home, groceries, and gifts for their children and grandchildren. Ms. Baker had also charged approximately $7,946 in attorney fees on the credit card. After Dr. Baker paid the $43,500 from marital as-

---

5. The company went out of business and the investment was lost.

sets, over which he had control, Ms. Baker continued to pay attorney fees, sometimes with cash and sometimes with credit. As of trial, she had incurred approximately $26,000 in attorney fees, not all of which had been paid. She estimated that her total attorney fees would amount to $54,640.

Dr. Baker paid his attorney fees from his Merrill Lynch debit checking account. Between May of 2003, when Ms. Baker filed her petition, and April of 2005, just before trial, Dr. Baker paid $114,257.16 in attorney fees. This amount did not include fees incurred during trial. The parties stipulated that the Merrill Lynch checking account was a marital asset, valued at $68,606 on February 28, 2005, the valuation date.

The district court made no specific findings as to whether Dr. Baker's payments constituted dissipation. The court rejected Ms. Baker's dissipation claims as to other expenditures not at issue here but did not mention attorney fees in this context. The court concluded that "[e]ach party shall be responsible for their own attorney's fees and costs."

The court of appeals reversed on this issue, holding that the district court abused its discretion and that Dr. Baker dissipated marital assets when he used those assets to pay his attorney fees. *Baker*, 733 N.W.2d at 824. The court observed that the district court's conclusion was incompatible both with case law and with the district court's order that each party should pay his or her own attorney fees. *Id.* The court of appeals remanded for the district court to compensate Ms. Baker accordingly. *Id.* We granted Dr. Baker's petition for further review on both the issue of whether the investment return

on the SIGS accounts was marital property and the issue of attorney fees.

## I.

■ The issue in this case is whether the total investment return on the nonmarital portion of Dr. Baker's SIGS accounts is marital property. We independently review the issue of whether property is marital or nonmarital, giving deference to the district court's findings of fact. *Gottsacker v. Gottsacker*, 664 N.W.2d 848, 852 (Minn. 2003). As we noted above, there were no withdrawals from Dr. Baker's SIGS accounts during the marriage, and all income earned on the accounts during the marriage—interest, dividends, and capital gains—was reinvested in the accounts. We consider whether the appreciation on the accounts—the increase in the value of the investments as opposed to the income earned on the accounts [6]—during the marriage is marital or nonmarital property.

■ Minnesota Statutes § 518.003, subd. 3b (2006), defines marital property as "property, real or personal, * * * acquired by the parties, or either of them, to a dissolution * * * at any time during the existence of the marriage relation between them, * * * but prior to the date of valuation." Nonmarital property is "property real or personal, acquired by either spouse * * *, which * * * (b) is acquired before the marriage; [or] (c) is acquired in exchange for or is the increase in value of" nonmarital property. *Id.* All property acquired by either spouse during the marriage is presumptively marital, but a spouse may defeat the presumption by showing by a preponderance of the evidence that the property acquired is non-

---

**6.** As noted later in this opinion, the court of appeals did not address the question of whether there was an increase due to income

earned by the nonmarital portion of the SIGS accounts, and it is not before us on review.

marital. *Id.;* *Antone v. Antone,* 645 N.W.2d 96, 101 (Minn.2002).

■ In determining whether the appreciation in the value of a nonmarital investment is marital or nonmarital, we look to whether or not the appreciation is the result of active management of the investment, classifying active appreciation as marital property and passive appreciation as nonmarital property. *Gottsacker,* 664 N.W.2d at 853. We have explained the difference between active and passive appreciation as follows:

> [I]ncrease in the value of nonmarital property attributable to the efforts of one or both spouses during their marriage, like the increase resulting from the application of marital funds, is marital property. Conversely, an increase in the value of nonmarital property attributable to inflation or to market forces or conditions[ ] retains its nonmarital character.

*Nardini v. Nardini,* 414 N.W.2d 184, 192 (Minn.1987); *see also Gottsacker,* 664 N.W.2d at 853.

Dr. Baker argues that appreciation is active only if caused by the application of marital effort. He argues that by focusing on control rather than effort, the court of appeals eliminated the possibility of passive appreciation of nearly any asset and, by extension, the possibility that any asset can remain nonmarital. Ms. Baker counters that the investment in this case was actively managed. Dr. Baker disputes this and argues that he expended "virtually no time, effort, or funds from the marriage to appoint an investment advisor to manage the accounts."

■ The classification of property as marital or nonmarital is grounded in the principle that marriage is a partnership and that each partner should get out of the marriage a fair share of what was put into it. Our discussion in *Nardini* is illustrative:

> [M]arriage is a joint enterprise whose vitality, success and endurance is dependent upon the conjunction of multiple components, only one of which is financial. * * * [T]he extent to which each of the parties contributes to the marriage is not measurable only by the amount of money contributed to it during the period of its endurance but, rather, by the whole complex of financial and nonfinancial components contributed. The function of equitable distribution is to recognize that when a marriage ends, each of the spouses, based on the totality of the contributions made to it, has a stake in and right to a share of the marital assets accumulated while it endured * * *.

414 N.W.2d at 192 (quoting *Wood v. Wood,* 119 Misc.2d 1076, 465 N.Y.S.2d 475, 477 (N.Y.Sup.Ct.1983)). We have never addressed how Minn.Stat. § 518.003, subd. 3b, and its underlying rationale should affect the classification of investment portfolios such as those at issue here.

We have, however, decided a number of cases involving the classification of other kinds of property. *See Gottsacker,* 664 N.W.2d at 852–58 (holding that an Accumulated Adjustment Account (AAA) in a subchapter S corporation was nonmarital property on the dual bases that the wife had no control over distributions from the AAA and that no marital effort increased the value of the wife's interest in the AAA); *Antone,* 645 N.W.2d at 103–05 (holding that there was "marital equity" in rental properties to the extent that the rental income during the marriage reduced the properties' mortgage balances; that there was a marital component to the homestead, even though the husband had bought it before the marriage and its mortgage balances had actually increased

during the marriage; and that the husband's interest in a business was marital because it was purchased with marital funds, even though it was a successor to a similar failed nonmarital business); *Nardini*, 414 N.W.2d at 195 (holding that increase in value of couple's closely held corporation, in which the husband had acquired 50% ownership before the marriage, was marital because it was attributable to the efforts of the spouses during the marriage); *Faus v. Faus*, 319 N.W.2d 408, 412 (Minn.1982) (affirming trial court's conclusion that a homestead purchased with nonmarital assets was marital because much of its value came from improvements made by the couple during the marriage); *Brown v. Brown*, 316 N.W.2d 552, 553 (Minn.1982) (finding reversible error when the trial court "failed to adequately account for the distinction between the nonmarital and marital character of the homestead property"); *Schmitz v. Schmitz*, 309 N.W.2d 748, 749–50 (Minn. 1981) (holding that a duplex purchased with nonmarital assets was marital property to the extent that the mortgage had been paid with rental income during the marriage). In *Schmitz*, we endorsed the use of a formula to apportion the marital and nonmarital components of a single asset. 309 N.W.2d at 750. We later summarized the formula as follows:

> The present value of a nonmarital asset used in the acquisition of marital property is the proportion the net equity or contribution at the time of acquisition bore to the value of the property at the time of purchase multiplied by the value of the property at the time of separation. The remainder of equity increase is characterized as marital property * * *.

*Brown*, 316 N.W.2d at 553.

In light of the foregoing, we conclude that central to the classification of appreci-

ation of nonmarital property as marital or nonmarital is the principle that effort expended to generate property during the marriage—that is, "marital effort"—should benefit both parties rather than one of the parties to the exclusion of the other. In all of the cases where we have held appreciation of nonmarital property to be marital, significant effort that otherwise could have been devoted to the generation of marital property was diverted and applied toward nonmarital property instead. *See, e.g., Antone*, 645 N.W.2d at 103–05; *Nardini*, 414 N.W.2d at 195; *Faus*, 319 N.W.2d at 412; *Schmitz*, 309 N.W.2d at 750.

■ In contrast, in this case the court of appeals based its decision in significant part upon the fact that Dr. Baker had control over the SIGS accounts. *Baker*, 733 N.W.2d at 821 ("[T]he ability to control investments or withdraw funds can defeat a claim that the increases in value of premarital funds were the result of passive appreciation."). We agree with Dr. Baker that whether appreciation is generated through marital effort has been central to our decisions and that the court of appeals erred in adopting a different test. As Dr. Baker argues, the court of appeals' control test all but eviscerates the statutory intent to protect the nonmarital character of increases in the value of nonmarital property. Many traditionally nonmarital assets are within a spouse's control. For example, a gift or inheritance to only one spouse may be hers to do with as she pleases, and yet it is expressly nonmarital under Minn.Stat. § 518.003, subd. 3b(a). We have held that property over which a party has control may be nonmarital in whole or in part. *Gottsacker*, 664 N.W.2d at 856 (degree of control shareholder spouse can exercise over corporation determines whether retained earnings are marital or nonmarital asset). Therefore,

we reaffirm *Nardini* and hold that the single test for whether appreciation in the value of nonmarital property is marital or nonmarital is the extent to which marital effort—the financial or nonfinancial efforts of one or both spouses during the marriage—generated the increase.

■ We turn next to the question of whether Dr. Baker's actions in this case constitute "marital effort." This case differs materially from our earlier "marital effort" cases, which have dealt primarily with small businesses or real estate. Here instead we consider a portfolio of stocks and bonds of publicly traded companies and government securities. We conclude that in evaluating a portfolio of investments, we look to the character of the underlying investments themselves. *See Warner v. Warner*, 807 A.2d 607, 615 (Me. 2002) (holding that, under a statutory scheme similar to Minnesota's, stocks in a portfolio require individual analysis). We further conclude that absent evidence that the efforts of one or both spouses directly affected the value of an investment, the appreciation in the value of the investment is properly characterized as passive.[7] This approach is consistent with dicta in *Nardini*, in which we indicated that the *Schmitz* formula applies to publicly traded stocks. 414 N.W.2d at 193–94. Other jurisdictions have reached the same conclusion. *Warner*, 807 A.2d at 617 ("As publicly traded securities, any increase in the market value of the shares of Exxon, General Electric, Proctor & Gamble, and Union Pacific during the marriage was the product of market forces, not * * * marital effort."); *Lane v. Lane*, 375 So.2d 660, 673–74 (La. Ct.App.1978); *O'Brien v. O'Brien*, 131 N.C.App. 411, 508 S.E.2d 300, 307 (1998) (holding "that if either or both of the spouses perform substantial services during the marriage which result in an increase in the value of an investment account, that increase is to be characterized as an active increase and classified as a marital asset").

■ The court of appeals relied on two alternative theories under which the accounts could be considered nonmarital, both of which we reject. First, the court of appeals suggested that Dr. Baker expended enough personal effort to constitute active management of the overall investment portfolio and that therefore the appreciation in the portfolio as a whole should be considered active. *Baker*, 733 N.W.2d at 821. Dr. Baker's activity with respect to the accounts consisted of selecting and occasionally changing investment advisors; authorizing money managers to make discretionary decisions about the investments; retaining discretion to direct investments but exercising that discretion on only one occasion (to invest in a business with which his son was involved); and declining to withdraw from the funds although they were available as liquid assets.

We note that by utilizing professional investment institutions, Dr. Baker avoided the need to devote significant personal effort to managing his retirement funds. Dr. Baker worked full time and contributed his earnings to the marriage. The court of appeals' decision compels us to ask, if Dr. Baker expended too much marital effort to avail himself of the statutory definition of nonmarital property, what less could he have done? How else could he have invested his premarital retirement funds so as to ensure that their appreciation during marriage would remain nonmarital? We conclude that on this record, Dr. Baker's role in the investments was

---

7. There is no evidence in the record before us that either spouse directly affected the value of any individual investment in any of the SIGS accounts.

insufficient to render active the appreciation in the value of the overall portfolio.

 The court of appeals also reasoned that the money managers' actions with respect to the SIGS funds are attributable to Dr. Baker under agency principles. *Id.* We disagree. Although we acknowledge that had Dr. Baker done what Merrill Lynch did any appreciation would have been active, we find no authority for the proposition that a third party's activities constitute marital effort for purposes of determining whether property is marital or nonmarital. We have implicitly rejected this argument in the past, considering the increase in the value of nonmarital property to be marital only if generated by the personal efforts of the spouse. *See Gottsacker,* 664 N.W.2d at 857–58 (holding that AAA in subchapter S corporation of which the spouse was a part owner was nonmarital property). We reject the court of appeals' agency argument explicitly now, holding instead that only the financial and nonfinancial efforts of the spouses themselves are relevant to the assessment of marital effort.

 Alternatively, Ms. Baker argues that even if the appreciation in the nonmarital portion of the SIGS accounts would otherwise be nonmarital, the entire increase in the value of the SIGS accounts attributable to the value of the account at the date of the marriage should be considered marital property for two reasons. First, Ms. Baker points out, Dr. Baker failed to meet his burden to distinguish between the increase due to income earned by the nonmarital portion of the SIGS accounts, which is marital property, *see* Minn. Stat. § 518.003, subd. 3b (marital property is property acquired "at any time during the existence of the marriage"), and the increase due to appreciation. Second, nonmarital and marital funds were admittedly commingled in the SIGS accounts,

and the court of appeals has held that commingling of marital and nonmarital funds can render the nonmarital funds marital property. *See, e.g., Wiegers v. Wiegers,* 467 N.W.2d 342, 344 (Minn.App. 1991) ("When nonmarital and marital property are commingled, the nonmarital investment may lose that character unless it can be readily traced."). The court of appeals did not address these arguments, *see Baker,* 733 N.W.2d at 822 n. 5, and they are not before us on review. Accordingly, we remand to the court of appeals for consideration of these alternative arguments.

## II.

 We turn now to the issue of whether Dr. Baker dissipated marital assets by paying his attorney fees from a marital checking account. Under Minn. Stat. § 518.58, subd. 1a,

[d]uring the pendency of a marriage dissolution, * * * each party owes a fiduciary duty to the other for any profit or loss derived by the party, without the consent of the other, from a transaction or from any use by the party of the marital assets. If the court finds that a party to a marriage, without consent of the other party, has * * * during the pendency of [ ] the current dissolution * * * proceeding, transferred * * * marital assets except in the usual course of business or for the necessities of life, the court shall compensate the other party by placing both parties in the same position that they would have been in had the transfer * * * not occurred.

In *Thomas v. Thomas,* the court of appeals held that "[a]ny amount taken from marital property to pay one party's attorney's fees should be accounted for on remand and the other party compensated in the distribution." 407 N.W.2d 124, 128 (Minn. App.1987). Dr. Baker contests the court of appeals' decision that in paying his at-

torney fees from a marital checking account, he violated Minn.Stat. § 518.58, subd. 1a.

It is undisputed that Dr. Baker paid his attorney fees from an account that was ultimately classified as marital under the district court's property division. It is also undisputed that attorney fees are not, in the language of the statute, expenses "in the usual course of business or for the necessities of life." Therefore, certainly any attorney fees paid from marital assets before the stipulated temporary order should be accounted for.

As for attorney fees paid after the stipulated temporary order, Dr. Baker argues that the funds were paid with nonmarital assets because they were acquired after the statutorily presumptive valuation date that was subsequently changed by the court. This argument is without merit. There was no agreement by the parties about a valuation date and, at the pretrial hearing in September of 2004, the court set a valuation date different from that presumed in the statute. Dr. Baker had no reason to rely on the statute, nor is there anything in the record to indicate that he actually did so.

Dr. Baker relies on the language in the statute limiting the prohibition to transfers "without the consent of the other," arguing that the stipulated temporary order constituted Ms. Baker's consent. In the order, the parties agreed that the restriction on how they spent their income would not apply to future earned income. The question, then, is whether the $114,257.16 paid by Dr. Baker to his attorney was earned by Dr. Baker after the stipulated temporary order filed on August 25, 2003. Because the checking account commingled Dr. Baker's future earnings with marital earnings, and because he apparently spent his earnings on many things other than attorney fees, we cannot assess the validity of Dr. Baker's claim that the attorney fees were all paid from income earned after entry of the stipulated temporary order. This is a question of fact the district court should have resolved.

There is a disjuncture within the district court's action with respect to attorney fees, the facts it found, and its order that each party pay his or her own attorney fees. To the extent that it permitted Dr. Baker to subsidize his attorney fees with marital assets, the district court abused its discretion. After addressing Ms. Baker's remaining SIGS accounts argument on remand, the court of appeals should remand to the district court for determination of the extent to which Dr. Baker's attorney fees and other expenditures outside the usual course of business or for the necessities of life were paid from marital assets rather than income earned after entry of the stipulated temporary order. The district court should then compensate Ms. Baker accordingly, taking into account the extent to which marital assets also have been used to pay her attorney fees. We therefore affirm the court of appeals as to the issue of attorney fees.

Affirmed in part, reversed in part, and remanded.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

ANDERSON, PAUL H., Justice (concurring).

I concur in the result reached by the court in this case.