*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0323**

In re the Marriage of:
Todd Emil Nelson, petitioner,
Appellant,

vs.

Leslie Ann Nelson,
Respondent.

**Filed December 21, 2015
Affirmed in part as modified, reversed in part, and remanded
Chutich, Judge**

Douglas County District Court
File No. 21-FA-14-16

Carol Grant, Kurzman Grant Law Office, Minneapolis, Minnesota (for appellant)

Kevin D. Conneely, Keith Moheban, Stinson Leonard Street LLP, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Chutich, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Todd Nelson appeals from a marriage dissolution judgment awarding respondent Leslie Nelson a property settlement and limiting his parenting time to one weekend a month and alternating holidays. He argues that the district court erred by

(1) severely restricting his parenting time without considering a relevant statutory presumption or finding endangerment and (2) incorrectly valuing Leslie Nelson's share of various property. Because we conclude that the district court abused its discretion in failing to consider the relevant statutory presumption regarding parenting time, we reverse and remand for reconsideration consistent with the presumption. Because we conclude that the district court properly valued and divided most of the disputed property, we affirm in part as modified below.

## FACTS

Todd Nelson and Leslie Nelson were married on March 1, 2007, and have three children together. The parties were previously married in June 1998, and divorced in September 2001. During this marriage, the family lived together in a mobile home on land owned by Todd.[1] The parties separated in December 2000, and Todd filed for divorce. Leslie did not appear for the divorce trial, and the district court entered a default judgment awarding Todd sole physical custody of their first child. At the time of the divorce, Leslie was using methamphetamine and living with her boyfriend in the Twin Cities.

By late 2001 or 2002, Leslie stopped using methamphetamine, moved back to Douglas County, and began visiting Todd and their daughter. Soon after, Leslie became pregnant with the parties' second child; by July 2002, Leslie moved in with Todd and the

---

[1] We typically do not refer to parties by their first names. Because the parties share a last name, we do so here to avoid confusion.

parties resumed their relationship. The parties cohabitated continually until they were married again in March 2007.

During their cohabitation, the parties had two children and built a home together; much of the work on the home was completed while the couple was unmarried. The parties disagree regarding the financial and labor contributions that Leslie made to the family home, but the district court found that her contributions were equivalent to approximately 20 percent of the fair market value of the home.

The couple also owned a homeowner's insurance policy from North Star Insurance that they purchased together in 2003. The policy was held in both parties' names and the premiums were paid out of their joint checking account. In July 2009, a shed that Todd built before their first marriage was destroyed in a fire. The parties filed a claim of loss and ultimately received proceeds of $82,678.55. The district court found that "[a]pproximately $35,000 of the proceeds were not used for the purchase of replacement property or the cost of rebuilding the shed." After using $15,000 to rebuild the shed, Todd transferred the entire balance to his own savings account and testified that he spent the remaining proceeds on attorney fees and living expenses.

The parties separated again on September 6, 2013. On September 11, 2013, Leslie obtained an order for protection against Todd, which remained in effect until September 11, 2015. Douglas County Social Services conducted a child protective services investigation based on the allegations underlying the order for protection and concluded that the children did not need protective services.

Since the parties' separation, Leslie has had primary custody of the children through a voluntary agreement between the parties, and she and the children have been living together at the family home. Todd had liberal parenting time according to an informal and voluntary agreement with Leslie, but his time became more limited before the marriage dissolution proceeding began. The parties gave sharply conflicting testimony regarding their respective parenting and care of their children. The district court generally believed Leslie's testimony and disbelieved Todd's testimony when it conflicted with Leslie's.

After a two-day hearing, the district court issued its judgment awarding Leslie: (1) sole legal and physical custody of the children; (2) half of the unused North Star insurance proceeds, or $17,500; (3) a $7,500 marital interest in the shed; and (4) $35,000 as reimbursement for the value of her contributions to the construction of the home. The district court also awarded Todd parenting time "on the third full weekend of each month from Friday at 5:30 until Sunday at 5:30 p.m." as well as alternating holidays. Todd appeals.

**D E C I S I O N**

## I. Parenting Time

Todd does not contest the district court's award of sole physical and legal custody of the parties' children to Leslie, but he does argue that the district court erred in limiting his parenting time to two days a month and alternating holidays. He contends that the district court failed to apply a rebuttable statutory presumption of 25 percent parenting time, *see* Minn. Stat. § 518.175, subd. 1(g) (2014), and failed to justify limiting his

4

parenting time with a finding of endangerment. Todd also generally challenges the district court's findings of fact and credibility determinations. Although we conclude that the district court's findings of fact are not clearly erroneous and the district court did not err in failing to make an endangerment finding, we agree that the district court abused its discretion when it did not explicitly consider the rebuttable statutory presumption governing parenting time.

After determining the physical custody of a child, "the court shall, upon the request of either parent, grant such parenting time on behalf of the child and a parent as will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child." *Id.*, subd. 1(a) (2014). The issue of parenting time is "governed by the best interests of the child." *In re Welfare of B.K.P.*, 662 N.W.2d 913, 916 (Minn. App. 2003); *see also Courey v. Courey*, 524 N.W.2d 469, 472 (Minn. App. 1994).

District courts have broad discretion in deciding parenting-time questions. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). A district court abuses that discretion when it improperly applies the law or makes findings of fact that are not supported by the evidence. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). Findings of fact are reviewed for clear error, *id.*, and appellate courts defer to the district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

## A.    Rebuttable Presumption of 25 Percent Parenting Time

"In the absence of other evidence, there is a rebuttable presumption that a parent is entitled to receive a minimum of 25 percent of the parenting time for the child." Minn.

Stat. § 518.175, subd. 1(g). The district court did not explicitly consider this presumption in its findings of fact or conclusions of law. Todd relies on this court's precedent in *Hagen v. Schirmers*, 783 N.W.2d 212 (Minn. App. 2010), to argue that omitting consideration of the 25 percent presumption is an abuse of discretion. In *Hagen*, this court held that a district court must "demonstrate an awareness and application of the 25% presumption when the issue is appropriately raised and the court awards less than 25% parenting time." *Id.* at 217 (citation omitted).

*Hagen* stated:

> Minnesota Statute Section 518.175, subdivision 1(e), is a legislatively imposed benchmark for parenting time. As such, the provision would be stripped of its purpose if appellate courts could, after the fact, calculate parenting time in a light most favorable to the decision and supply findings as a basis to conclude that the presumption, if considered, would have been overcome.

*Id.* at 218. This court further noted that when district courts have a broad degree of discretion, it is particularly important that the district court "identify both its decision (e.g., spousal maintenance, child support, parenting time) as well as the underlying reason(s) for that decision (i.e., findings showing why the amount of maintenance, child support or parenting time is appropriate in the particular case)." *Id.* at 217-18 (citing *Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989) (stating, in spousal-maintenance context, that "[e]ffective appellate review of the exercise of [the district court's] discretion is possible only when the [district] court has issued sufficiently detailed findings of fact to demonstrate its consideration [of all relevant factors]"); *Wallin v. Wallin*, 290 Minn. 261, 267, 187 N.W.2d 627, 631 (1971) (stating that, given the district court's broad discretion

in family cases, it is especially important that the basis for its decision be set forth with a high degree of particularity)). The court in *Hagen*, therefore, remanded for consideration of the rebuttable statutory presumption. *Id.* at 219-20.

A footnote in *Hagen* reiterated the importance of raising the presumption to the district court because appellate courts "do not consider matters not argued to and considered by the district court." *Id.* at 219 n.4 (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)). Leslie argues that a remand here would be inappropriate because she suggested the parenting-time schedule adopted by the district court at trial and Todd did not raise the statutory presumption in response.

Leslie's assertion is incorrect. Todd did alert the district court to the statutory presumption in his written closing: "At a minimum, Minn. Stat. § 518.175, subd. 1(g), establishes a rebuttable presumption that each parent is entitled to at least 25% of the parenting time." We conclude that raising the issue in a written closing argument sufficiently alerts the district court of the need to address the rebuttable presumption. Accordingly, remand of the issue of parenting time is necessary.

**B.    Endangerment Finding**

Todd further contends that the district court effectively restricted his parenting time by awarding him less parenting time than he was getting under the parties' voluntary agreement. Assuming that court-awarded parenting time in an amount less than the amount he had under the parties' voluntary agreement is a restriction under Minnesota Statutes section 518.175, subdivision 5, he asserts that the district court erred in failing to justify this assumed restriction with a finding of endangerment. *See* Minn. Stat.

7

§ 518.175, subd. 5(b)(1)(2014) ("Except as provided in section 631.52, the court may not restrict parenting time unless it finds that . . . parenting time is likely to endanger the child's physical or emotional health or impair the child's emotional development . . .").

Because Todd may attempt to raise this contention upon remand, we address it now. *See generally Lee v. Lee*, 775 N.W.2d 631, 642 (Minn. 2009) (making "further comment" on certain issues "[i]n light of our decision"). If the assumption underlying Todd's argument is that an award of parenting time of less than the presumed minimum of 25 percent is a restriction of parenting time under Minnesota Statutes section 518.175, subdivision 5, that assumption is incorrect. *See Hagen*, 783 N.W.2d at 218 (noting, in the context of a parenting-time modification, that "[a]lthough a 'restriction' [of parenting time] requires a finding of endangerment or noncompliance with court orders, parenting-time allocations that merely fall below the 25% presumption can be justified by reasons related to the child's best interests and considerations of what is feasible given the circumstances of the parties") (citation and footnote omitted).

Further, Todd's argument is unavailing because Minnesota Statutes section 518.175, subdivision 5, only applies to *modifications* of parenting time. The current appeal involves an initial grant of parenting time, rather than a modification, so the statute relied upon by Todd does not apply. And Todd does not contend that the initial grant of parenting time was a restriction under Minnesota Statutes section 518.175, subdivision 1(b) (2014).

Accordingly, we conclude that he has shown neither error nor abuse of discretion by the district court and decline to address the issue of whether the initial grant was a

restriction. *See State Dep't. of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to address issue absent adequate briefing); *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (stating assignment of error in brief based on mere assertion is waived "unless prejudicial error is obvious on mere inspection").

### C. Other Arguments

Todd raises other general challenges to the district court's findings of fact supporting its determination of parenting time. He argues that the district court did not "consider the age of the children and the children's relationship with their dad prior to the commencement of the proceeding" and that "[t]here was no expert opinion supporting the deviation from the normal of 10%-45% parenting time between father and children." He argues that Leslie's testimony was uncorroborated and unreliable and generally asserts that the district court erred in crediting her testimony over his. He also contends that the district court improperly blamed him for the order for protection.

Because we remand for explicit consideration of the 25 percent parenting time presumption, we need not address these contentions in detail. To the extent that Todd is challenging the district court's credibility determinations, however, these claims are unavailing. *See Sefkow*, 427 N.W.2d at 210 (noting that "[d]eference must be given to the opportunity of the trial court to assess the credibility of the witnesses").

## II. Property Division

Todd next challenges the district court's property settlement awarding Leslie a total of $60,000 plus interest. He argues that the district court abused its discretion by

awarding Leslie: (1) $17,500 in unused insurance proceeds; (2) $7,500, or half the cost of the replacement shed the parties built on Todd's property; and (3) $35,000, or 20 percent of the value of the homestead. After carefully considering the parties' arguments, we conclude that the district court did not abuse its discretion in awarding Leslie half the cost of the shed and 20 percent of the value of the homestead. But because the district court erred in concluding that spending marital assets for ordinary living expenses is a transfer, encumbrance, concealment, or disposition of marital property in violation of Minnesota Statutes section 518.58, subdivision 1a (2014), we modify the award of the unused insurance proceeds.

Appellate courts "independently review the issue of whether property is marital or nonmarital, giving deference to the district court's findings of fact." *Baker v. Baker*, 753 N.W.2d 644, 649 (Minn. 2008). This court will only overturn a finding of fact if it is "clearly erroneous on the record as a whole." *Lund v. Lund*, 615 N.W.2d 860, 861 (Minn. App. 2000).

### A.     Excess Insurance Proceeds - $17,500

Todd contends that the district court erred in awarding Leslie $17,500 of the "unused North Star insurance proceeds."

Minnesota Statutes section 518.58, subdivision 1a, provides the following:

> During the pendency of a marriage dissolution, . . . or in contemplation of commencing a marriage dissolution, . . . each party owes a fiduciary duty to the other for any profit or loss derived by the party, without the consent of the other, from a transaction or from any use by the party of the marital assets. If the court finds that a party to a marriage, without consent of the other party, has in contemplation of

> commencing, or during the pendency of, the current dissolution . . . transferred, encumbered, concealed, or disposed of marital assets *except in the usual course of business or for the necessities of life*, the court shall compensate the other party by placing both parties in the same position that they would have been in had the transfer, encumbrance, concealment, or disposal not occurred.

Minn. Stat. § 518.58, subd. 1a (emphasis added). The party claiming a violation of this provision has the burden of proof. *Id.*

In *Baker v. Baker*, the Minnesota Supreme Court stated that attorney fees are not expenses "in the usual course of business or for the necessities of life." 753 N.W.2d at 653–54 (quoting Minn. Stat. § 518.58, subd. 1a). The *Baker* court also quoted approvingly from this court's decision in *Thomas v. Thomas*, 407 N.W.2d 124 (Minn. App. 1987), concluding that "[a]ny amount taken from marital property to pay one party's attorney's fees should be accounted for on remand and the other party compensated in the distribution." *Id.* at 653 (quoting *Thomas*, 407 N.W.2d at 128).

Here, the district court ruled that the North Star insurance proceeds, including the unused portion, were a marital asset, and that determination is not challenged on appeal. The district court further found that, in 2009, Todd "transferred $35,000 of the unused proceeds into his individual savings account" and ultimately spent the entire value of this marital asset after the parties separated.

The district court specifically found that Todd paid $30,000 in attorney fees from those funds. It concluded that Leslie was entitled to one half of the value of the unused proceeds and ordered Todd to reimburse her for $17,500. As in *Baker*, the district court ordered that "[e]ach party shall be responsible for their own attorney's fees and costs

11

associated with this action." *See id.* at 649. Under *Baker*, the district court would abuse its discretion if it ordered the parties to pay their own attorney fees and allowed Todd to pay his attorney fees from a marital asset. *See id.* at 654.

The district court also stated at trial that buying groceries is an improper use of marital assets unless it is done jointly. The district court found that Todd spent the rest of the unused insurance proceeds on living expenses; it therefore awarded Leslie half of the total amount. This component of the award is contrary to Minnesota Statutes section 518.58, subdivision 1a, which states that a party is allowed to spend marital assets "in the usual course of business or for the necessities of life" without the consent of the other party. Minn. Stat. § 518.58, subd. 1a. Accordingly, we conclude that the district court erred in finding that Todd violated Minnesota Statutes section 518.58, subdivision 1a, by spending the remaining $5,000 of the unused insurance proceeds on living expenses.

The district court did not clearly err in finding that Todd violated Minnesota Statutes section 518.58, subdivision 1a, by spending $30,000 of marital assets on attorney fees and in awarding Leslie half that amount. But because the district court clearly erred by finding that Todd improperly expended the remaining $5,000 of unused proceeds by spending it on ordinary living expenses, we modify the property award from $17,500 to $15,000.

**B.     50 Percent of Value of New Shed - $7,500**

Todd next argues that the district court erred by ruling that the new shed was marital property and awarding Leslie half its value. He contends that because he built the original shed, it was nonmarital property. Accordingly, he claims that the new shed is

also nonmarital property, even though it was built during the marriage and funded by proceeds from a homeowner's insurance policy, the proceeds of which the district court ruled to be marital property. He contends that were it not for the original, nonmarital shed, there would not be any insurance proceeds. He further asserts that the additional insurance premium to cover the shed was "probably miniscule" and that the district court's analysis fails to acknowledge that he built the shed.

Marital property presumptively includes any property that either or both parties acquire during the marriage, unless covered by an enumerated exception. *See* Minn. Stat. § 518.003, subd. 3b, 3b(a)–(e) (2014). "To overcome the presumption that property is marital, a party must demonstrate by a preponderance of the evidence that the property is nonmarital." *Antone v. Antone*, 645 N.W.2d 96, 101 (Minn. 2002).

When nonmarital and marital funds are commingled, the party asserting that the assets are nonmarital must sufficiently trace the nonmarital assets to prove the nonmarital character. *Crosby v. Crosby*, 587 N.W.2d 292, 296–97 (Minn. App. 1998), *review denied* (Minn. Feb. 18, 1999). Property can have "both marital and nonmarital aspects." *Schmitz v. Schmitz,* 309 N.W.2d 748, 750 (Minn. 1981). But "[w]hen nonmarital and marital property are commingled, the nonmarital investment may lose that character unless it can be readily traced." *Wiegers v. Wiegers*, 467 N.W.2d 342, 344 (Minn. App. 1991). In addition, improvements made to premarital property, if made during the marriage, should be considered marital. *Wilson v. Wilson*, 348 N.W.2d 357, 359 (Minn. App. 1984).

Here, Todd had the burden to demonstrate that the shed is nonmarital property. The shed was rebuilt during the parties' marriage, using proceeds from an insurance policy that the district court characterized as marital property. Todd cites no caselaw to support his assertion that, because the original insured property was his nonmarital property, the property rebuilt with what the district court ruled to be the martial proceeds of the insurance policy should also be nonmarital. On this record, we affirm the district court's determination that Todd did not carry his burden to prove by a preponderance of the evidence that the new shed is nonmarital property.

Todd further argues that the district court erred in finding that the replacement cost of $15,000 equals the fair market value of the shed. He asserts that it "is axiomatic that replacement cost is not fair market value," and notes the lack of testimony about the value or characteristics of the shed. He suggests, without citing any legal authority, that the appropriate standard would be the amount "an arm's length buyer [would] pay for the used shed which would have to be moved[]." We disagree.

The district court "has discretion in valuation and division of marital property upon the dissolution of the marriage. Its decision should not be overturned in the absence of a clear abuse of discretion or an erroneous application of the prevailing law." *Ebnet v. Ebnet*, 347 N.W.2d 840, 842 (Minn. App. 1984). "Exactitude is not required of the trial court in the valuation of assets in a dissolution proceeding; it is only necessary that the value arrived at lies within a reasonable range of figures." *Johnson v. Johnson*, 277 N.W.2d 208, 211 (Minn. 1979).

In addition, district courts may value property based solely on oral testimony. *Doering v. Doering*, 385 N.W.2d 387, 390–91 (Minn. App. 1986) (holding that the district court's decision to base its valuation on one party's estimate was not clearly erroneous). In *Ebnet*, this court ruled that one party's testimony regarding the value of the home was sufficient for the purposes of property division. 347 N.W.2d at 840. This court has also stated that:

> On appeal, a party cannot complain about a district court's failure to rule in her favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question.

*Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003), *review denied* (Minn. Nov. 25, 2003).

Leslie argues that the district court was within its discretion when it valued the shed at $15,000 based on its evaluation of the witness testimony. She notes that Todd's testimony established the evidence for the valuation: he testified that the shed contributes "probably $15,000" to the fair market value of the homestead. We conclude that, under *Ebnet* and *Doering*, the district court was within its discretion when it valued the shed at $15,000 based solely on Todd's testimony.

### C.  20 Percent of Value of the Homestead - $35,000

Finally, Todd challenges the district court's property award of 20 percent of the value of the homestead to Leslie. We initially note that the home was built between the parties' marriages and therefore is not marital property. *See* Minn. Stat. § 518.003, subd. 3b (defining marital property). Here, Todd contends that the district court erred by

speculating about the value of the homestead and Leslie's contributions without the aid of expert testimony. We reject these contentions.

### 1. Jurisdictional Bar

Todd first asserts that the district court erred in addressing Leslie's claim to reimbursement for her contributions to the homestead because the parties were not married at the time most of the house was built, and thus Minnesota's anti-palimony statutes strip the court of jurisdiction. *See* Minn. Stat. §§ 513.075- .076 (2014). We find this assertion to be without merit.

Minnesota Statutes sections 513.075-.076 create a jurisdictional bar that prevents courts from hearing claims "based on the fact that the individuals lived together in contemplation of sexual relations and out of wedlock within or without this state," Minn. Stat. § 513.076, unless the individuals signed a written contract and sought enforcement after the relationship was over. Minn. Stat. § 513.075.

The Minnesota Supreme Court has held, however, that the jurisdictional bar imposed by sections 513.075 and 513.076 applies only when the "sole consideration for a contract between cohabiting parties is their contemplation of sexual relations out of wedlock." *In re Estate of Eriksen*, 337 N.W.2d 671, 674 (Minn. 1983). The supreme court also clarified that "the statutory bar does not apply where one party is merely seeking to preserve and protect [his or] her own property and is not seek[ing] to assert any rights in the property of a cohabitant." *In re Estate of Palmen*, 588 N.W.2d 493, 495 (Minn. 1999) (quotations omitted).

16

The *Palmen* court noted that Minnesota Statutes sections 513.075 and 513.076 prevent cohabiting couples from claiming the legal rights of married couples, but they "do not operate to automatically divest unmarried couples living together of all legal remedies." *Id.* at 496. This court found that "unless the sexual relationship constitutes the sole consideration for the property agreement, cohabiting parties may maintain actions against each other regarding their own earnings or property, based on equitable theories such as constructive trust or unjust enrichment." *Obert v. Dahl*, 574 N.W.2d 747, 749 (Minn. App. 1998), *aff'd*, 587 N.W.2d 844 (Minn. 1999).

In the context of property divisions between cohabiting partners, Minnesota courts have imposed constructive trusts as a remedy for unjust enrichment where there has been an agreement between the parties regarding that property. *See, e.g.*, *Eriksen*, 337 N.W.2d at 674 (imposing a constructive trust where underlying agreement was to join in the purchase of a home and parties had reasons not to put agreement in writing); *Obert*, 574 N.W.2d at 747 (finding summary judgment inappropriate when there was a question of material fact involving whether the parties had a property agreement that was not based solely on living together in contemplation of sexual relations); *see also Hollom v. Carey*, 343 N.W.2d 701 (Minn. App. 1984) (declining to impose a constructive trust where there was no clear understanding by the parties that the property would be jointly owned and no extenuating circumstances justifying lack of written agreement); *Tourville v. Kowarsch*, 365 N.W.2d 298 (Minn. App. 1985) (noting "the trial court accepted respondent's testimony that the parties did not have an agreement that appellant had an interest in the property").

17

The district court found that Leslie "made substantial contributions of both money and labor to the home's construction[,] and the value of her contributions is. . . approximately 20% of the portion of the homestead's total fair market value that is attributable to the home and curtilage." The district court thus awarded Leslie $35,000 as reimbursement for the value of her contributions to the home's construction. The district court concluded that the award was not barred by Minnesota Statutes sections 513.075-.076 because "it reimburses [her] for the value of her individual contributions to the home's construction, and, therefore, does not grant [her] a portion of [Todd]'s interest in the property."

The district court did not make any explicit findings regarding an underlying property agreement supporting the property award. But a district court's findings of fact can be implicit. *See Prahl v. Prahl*, 627 N.W.2d 698, 703 (Minn. App. 2001) (stating that "[w]e may treat statutory factors as addressed when they are implicit in the findings. . ."); *Eckman v. Eckman*, 410 N.W.2d 385, 389 (Minn. App. 1987) (stating that the district court's failure to make a specific finding was not reversible error when it was implicit in other findings). Because a finding of an express or implied agreement is required in an award under *Palmen* and *Eriksen*, and the district court made such an award, we will infer an implicit finding that the requisite agreement existed here and review that implicit finding.

Implicit findings of fact are reviewed for clear error. *See Vettleson v. Special Sch. Dist. No. 1*, 361 N.W.2d 425, 428 (Minn. App. 1985). On this record, we conclude that an implicit finding of an implied agreement is not clearly erroneous. Leslie testified that

18

she spent "hundreds of hours working on the home" and also contributed financially to its construction. The district court found her testimony credible and implicitly found that she would not have made these contributions unless the parties had an implied agreement that she would have an interest in the home in return.

Further, at least some of the district court's property award was attributable to financial and labor contributions that Leslie made *during* the marriage. Even though most of the house was completed during the period between the parties' two marriages, there is evidence that she continued to work on the house and make payments for materials while the parties were married. Because improvements made to nonmarital property during a marriage are presumed to be marital property, *Wilson*, 348 N.W.2d at 359, the district court also implicitly and properly found that these improvements are marital property and included their value in Leslie's property award.

Given these implicit and not clearly erroneous findings, we conclude that the district court was within its discretion when it awarded Leslie 20 percent of the value of the homestead.

### 2. Valuation

Finally, Todd argues that the district court erred in speculating about the value of the homestead and Leslie's contributions without the aid of expert testimony. As discussed earlier, the district court has broad discretion in determining property values when dividing property. *Ebnet*, 347 N.W.2d at 842. The district court is not required to be exact, *Johnson*, 277 N.W.2d at 211, and may value and divide property based solely on oral testimony. *Doering,* 385 N.W.2d at 390–91; *see also Bury v. Bury*, 416 N.W.2d

19

133, 136 (Minn. App. 1987) (stating that parties are presumptively competent to testify to the value of their assets).

The district court found that the total fair market value of the property is $217,000 and that $183,000 is attributable to the home and its curtilage. The district court found that the construction of the home was a collaborative effort and that Leslie spent "hundreds of hours working on the home." The district court also found that Todd "purchased and paid for the bulk of the materials, supplies, and labor in 2002 using his non-marital cash savings," but that some of the construction expenses were paid using the parties' joint checking account.

The district court did not abuse its discretion when it valued the homestead. Nor did the district court abuse its discretion in finding that the value of Leslie's contributions was approximately 20 percent of the home's fair market value, or $35,000. The district court did not clearly state how it calculated these numbers, but the 2014 property tax assessment valued the homestead at $217,100. Todd's written closing statement suggested $217,500. In the face of conflicting testimony, the district court credited Leslie's estimation of her contributions. Because the district court has broad discretion, and because this court defers to the district court's credibility determinations, we conclude that the district court did not abuse its discretion in valuing the homestead and Leslie's contributions as it did.

In sum, because we find that the district court properly valued the shed and Leslie's financial and labor contributions to construction of the family home, we affirm the awards of $7,500 for one-half the value of the shed and $35,000 for 20 percent of the

20

value of the homestead, respectively, to Leslie. Although we conclude that the district court properly found that Todd expended $30,000 in marital assets in violation of Minnesota Statutes section 518.58, subdivision 1a, by spending them on attorney fees, we conclude that it clearly erred when it found that he improperly expended the $5,000 of unused insurance proceeds that he spent on living expenses. Accordingly, we modify Leslie's award from the unused insurance proceeds from $17,500 to $15,000.

Finally, because the district court was alerted to the statutory parenting time presumption and did not address it, we remand for the district court to (1) determine parenting time giving consideration to the rebuttable presumption that a parent receives 25 percent parenting time; (2) determine parenting-time percentages; (3) make findings supporting its determinations; and (4) state the basis for departing from the statutory presumption, if applicable. As in *Hagen*, we "reiterate that the statute gives district courts flexibility in weighing the evidence and the presumption." *Hagen*, 783 N.W.2d at 219. Upon remand, the district court may in its discretion reopen the record to make findings consistent with the statutory presumption.

**Affirmed in part as modified, reversed in part, and remanded.**